173 So.2d 373 (1965)
Mildred Chapman JONES et al.
v.
The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES et al.
No. 6346.
Court of Appeal of Louisiana, First Circuit.
March 8, 1965.
Rehearing Denied April 12, 1965.
Writ Refused June 7, 1965.
Joseph A. Gladney, Baton Rouge, for appellants.
Ben W. Lightfoot of Durrett, Hardin, Hunter, Dameron & Fritchie, Watson, Blanche, Wilson, Posner & Thibaut, Ralph L. Roy, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
REID, Judge.
This is a suit brought by plaintiffs, Mildred Chapman Jones and Alice Chapman Lafayette claiming to be the surviving children of Allen Chapman to recover the proceeds of a group life insurance certificate covering the life of the said Allen Chapman, deceased, which said suit was in the original amount of Five Thousand Five Hundred Four and 05/100 ($5504.05) Dollars, but which by agreement has been reduced to Forty-Five Hundred and no/100 ($4500.00) Dollars. The children were born of the marriage of Allen Chapman and Novella Smith Chapman.
The deceased, Allen Chapman, died on October 6, 1957 at which time he was living with defendant, Pearl Galloway Chapman, to whom he was married on August 8, 1938. The undisputed facts show that the plaintiffs' mother divorced their father, Allen Chapman on June 10, 1929 on the grounds of adultery and that defendant, Pearl Galloway Chapman, was named in *374 the suit as the woman who was living in open and notorious adultery with the said Allen Chapman. At the time of the divorce on June 10, 1929 the defendant was at that time lawfully married to William Galloway and subsequent to the divorce on June 10, 1929 defendant and the said Allen Chapman lived as man and wife, even though defendant was still married to William Galloway until sometime in June 1938 the defendant and her husband William Galloway were divorced. The defendant and Allen Chapman after their marriage continued to live together as man and wife until the decedent's death.
At the time of the death of the said Allen Chapman there was in effect a group life insurance policy covering his life issued by the defendant, The Equitable Life Assurance Society of the United States. The said policy was a group policy issued between Standard Oil Company of New Jersey, the decedent's employer and The Equitable Life Assurance Society of the United States and under the said group policy a certificate had been issued to the said Allen Chapman. Under the policy in effect at the time of the decedent's death there was not a named beneficiary, but under the policy there was a preference beneficiary schedule designating certain parties or survivors of the insured in order of preference to receive the proceeds of the insurance policy. The first class of survivors was the surviving widow and the schedule then provided if there were no surviving widow the second class of survivors were the children.
The proceeds of the policy were paid by The Equitable Life Assurance Society of the United States to the defendant, Pearl Galloway Chapman, who the plaintiffs maintain was not entitled to the proceeds due to the fact that the marriage of August 8, 1938 between the defendant Pearl Galloway Chapman and the deceased Allen Chapman was a nullity under LSA-Civil Code Article 161 in that the defendant had been named as the accomplice in adultery in the divorce suit by plaintiffs' mother, Novella Smith Chapman against their father Allen Chapman. The plaintiffs allege that the defendant was not in good faith in entering into her marriage with Allen Chapman in that she was living in open adultery with plaintiffs' father while he was married to plaintiffs' mother; that she knew he was married and that she had knowledge that she was the named co-respondent in a divorce suit brought by plaintiffs' mother against the deceased. Plaintiffs further allege that defendant was present in Court at the time that the judgment of divorce, based on the grounds of adultery, was granted.
After the trial of the case, but before the rendition of the judgment, plaintiffs filed a motion dismissing their suit against the Equitable Life Assurance Society of the United States as of non-suit, without prejudice and with reservation of plaintiffs' rights against the defendant, Pearl Galloway Chapman.
Defendant Pearl Galloway Chapman maintains, first, that even accepting all of the facts claimed by plaintiffs as being true that any impediment to the marriage of Allen Chapman and Pearl Galloway Chapman has been removed by the Louisiana Legislature in amending LSA-Civil Code Article 161. The first amendment was made in 1958 validating all marriages contracted prior to December 31, 1938, in contravention of this article but not otherwise invalid. There was a further amendment in this article in 1962 making all marriages contracted prior to December 31, 1962 valid. The defendant, therefore, contends that the marriage was validated and ratified by the Legislature in passing Act 1958 No. 340, Section 1, defendant claiming that it was the intention of the Legislature to ratify such marriages and that the act clearly has retroactive effect. The defendant further contends that if it should be held that Article 161 was not applicable to the facts of this case that the record clearly discloses that the defendant Pearl Galloway Chapman was after August 8, 1938, the date of her marriage to the decedent, the putative wife of the said Allen Chapman *375 and thus entitled to the civil effects and benefits flowing from this marriage.
It was upon these issues that the case was tried and for written reasons assigned a judgment was rendered dismissing plaintiffs' suit against the defendant Pearl Galloway Chapman and it is from this judgment that this appeal is lodged.
The Trial Judge in his written reasons for judgment based his position upon the Legislative amendments to LSA-Civil Code Article 161 set forth above and held that it was the Legislature's intent to ratify such marriages and to give them legal status and that, therefore, the marriage between Allen Chapman and Pearl Galloway Chapman was duly ratified by the Acts of 1958 and 1962 amending the said Article 161. The Trial Judge apparently felt that as this suit was filed on November 23, 1960, a date after the 1958 amendment the amended act had the effect of ratifying the said marriage.
It is doubtful that the amendment of Article 161 can be applied retroactive to the case at issue, in that the decedent died on October 6, 1957 prior to the amendment and the rights of the parties concerning the legal effects flowing from the marriage would ordinarily be fixed at that time and that, therefore, the applicable law to be applied would be based upon LSA-Civil Code Article 161 as it existed at the time of the death of the decedent and as interpreted by the jurisprudence. At the time of the death of Allen Chapman the LSA-Civil Code Article in question read as follows:
"In case of divorce, on account of adultery, the guilty party can never contract matrimony with his or her accomplice in adultery, under the penalty of being considered and prosecuted as guilty of the crime of bigamy, and under the penalty of nullity of the new marriage."
However, in view of the following we do not feel that it is necessary for this Court to pass on the question as to whether or not Article 161 is to be given retroactive effect as we do not feel that any such interpretation is necessary to decide this case.
The central question at issue is whether or not the defendant, Pearl Galloway Chapman, was in good faith at the time of her marriage to the decedent and was, therefore, the putative wife of the said decedent and as such entitled to the civil effects and benefits flowing from said marriage.
Article 117 of the LSA-Civil Code reads as follows:
"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
Article 118 of the LSA-Civil Code reads as follows:
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."
There is no dispute between the plaintiffs and the defendant as to the facts stated above. The major factual dispute relates to whether or not the defendant knew that she was named as the accomplice in adultery in the divorce proceedings between Novella Smith Chapman and Allen Chapman and whether or not she had full knowledge of the facts of that suit and also the legal consequences therefrom.
Plaintiffs introduced a great deal of testimony to the effect defendant was present in the courtroom at the time their mother obtained a divorce from their father. This, of course, the defendant denies. However, accepting this to be true and assuming that the defendant knew that she was named as co-respondent in the divorce proceeding and that she had full knowledge of the divorce proceedings there still remains the question as to whether or not she was aware of the legal consequences resulting therefrom. An examination of the record discloses *376 that the plaintiffs have failed to prove that the defendant had any knowledge that there was a legal impediment to her marriage.
In the case of the Succession of Pigg, 228 La. 799, 84 So.2d 196, the Louisiana Supreme Court in discussing the question of good faith required by Articles 117 and 118 of the LSA-Civil Code stated as follows:
"Article 117 of the Civil Code provides that a null marriage nevertheless produces civil effects `* * * if it has been contracted in good faith * * *' and Article 118 declares `If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor * *'. It is well settled that the good faith referred to in these Articles means an honest and reasonable belief that the marriage was a valid one at the time of its confection. Good faith is presumed and the burden of proving the contrary rests on the party who alleges it. Succession of Navarro, 24 La. Ann. 298; Smith v. Smith, 43 La.Ann. 1140, 10 So. 248; Succession of Marinoni, 183 La. 776, 164 So. 797; Succession of Chavis, 211 La. 313, 29 So.2d 860 and Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502. Furthermore, if there is any doubt on the issue, it is to be resolved in favor of good faith. Jones v. Squire, 137 La. 883, 69 So. 733 and Funderburk v. Funderburk, supra."
See also Succession of Marinoni, 183 La. 776, 164 So. 797, which reads as follows:
"The good faith referred to as constituting a putative marriage means an honest and reasonable belief that the marriage was valid, and not that the marriage was actually legally valid. That this was an error on the part of plaintiff's mother makes no difference; for good faith in such a case results from error of law as well as from error of fact."
The question as to whether or not an error of law as well as an error of fact may be brought and established to prove such good faith is well established in the Louisiana jurisprudence.
In the case of the Succession of Buissiere, 41 La.Ann. 217, 5 So. 668 the issue revolved around the question of nullity of a marriage between an uncle and a niece who prior to the marriage were domiciled in the State of Louisiana, went to Mississippi, were married and then returned to the State of Louisiana. It was urged that as a marriage of an uncle and a niece was prohibited in Louisiana as in Mississippi at the date of the celebration and both parties knew constructively and actually of such prohibition the marriage was contracted in bad faith and was a nullity. It was argued that whether they knew or did not know of the prohibition it was done in violation of a prohibitory law and was thus null and void.
Judge Bermudez speaking as organ of the Court stated as follows in regard to the question of legal bad faith:
"On the question whether the defense of the ignorance of the law can be raised and admitted in the present controversy, much has been ably said and written by the learned counsel representing the litigants; but it would serve no useful purpose to enter into a discussion of the relative merits of the contention.
"The matter, long mooted, has been thoroughly considered, and may now be deemed as finally set at rest, as well by commentators as by courts of justice. In France, from which our legislation mostly derives, the plea has been allowed and sustained whenever the circumstances warranted. Article 201 of the Napoleon Code declares that the marriage which has been declared null produces, nevertheless, civil effects, as well as concerns the spouses as the children, when contracted in good faith. Article 202 of the same Code *377 provides, further, that, if good faith exists only on the part of one of the spouses, the marriage will produce civil effects in favor only of that spouse and of the children born of such marriage. Articles 117 and 118 of our Revised Code have the same import, and are substantially, if not identically, the same.
"From the views expressed in France, by distinguished commentators, as well as from the opinions there announced in some 10 cases, it appears that it is now a recognized and established principle that good faith may result as well from an error of law as from an error of fact, and that the parties contracting marriage, under circumstances from which such errors arise, are entitled to the relief allowed by law. * * * There is no reason why this humane exposition of the law should be questioned, and still less why we should run counter to it."
As stated above the record does not disclose any evidence to show that the defendant had any knowledge of the legal consequences of her having married the decedent after being named as co-respondent in his prior divorce suit and in fact the record is not conclusive that she had knowledge of the fact that she was named in the said divorce suit.
The facts in this case are very similar to those in the case of Kimball v. Folsom, D.C., 150 F.Supp. 482 involving a claim by the widow for Social Security benefits of her husband. Plaintiff was named as co-respondent in a prior divorce suit of her deceased husband and had lived with him in common-law prior to the said divorce. After the husband's divorce the plaintiff and her husband were married and lived together as man and wife for approximately 38 years until their marriage was terminated by the death of her husband. The defendant contended that the marriage was invalid in violation of Article 161. The Court held that the burden on the defendant to show that the plaintiff's marriage was contracted in bad faith and the Court determined that there was no evidence to show that the plaintiff had any knowledge of the nullity of her marriage and also held that the rule "Ignorance of the law" was no excuse was not applicable in such a case and stated that the good faith necessary to allow Civil effects could arise as a result of an error of law. The Court stated that to determine otherwise would require a party consulting a lawyer or Judge as to the law.
In the Kimball case as in the case at issue there was no evidence to show that the plaintiff had any knowledge of Article 161 of the LSA-Civil Code and the Court took into consideration the fact that the marriage contractants were colored, rural, uneducated and respected citizens. In the case at issue we are dealing with a colored woman with a tenth grade education, who could not be expected to be familiar with the provisions of Article 161.
Further indication of the good faith of the defendant can be seen by the fact that although she and the deceased lived together as man and wife prior to their marriage they did not attempt to get married until after the defendant had obtained a divorce from her first husband William Galloway.
It is, therefore, the opinion of this Court that the plaintiffs have failed to prove that the defendant was in bad faith, that she had any knowledge of the impediment to her marriage and that under the settled jurisprudence of the State of Louisiana she contracted the marriage with the decedent in good faith and would, therefore, be a putative wife and as such entitled to the civil effects of the marriage, that is in this case the proceeds from the insurance policy which is the subject of this suit.
Two further points, although not determinative of the issue, should be mentioned in passing. It is apparent from the fact that the Legislature has amended LSA-Civil Code Article 161 twice to give legal *378 effect to those marriages contracted in contravention to it shows a clear intent upon the part of the Legislature to give effect to marriage made in violation of this Article.
In addition, the record shows that when the decedent first came under the group insurance plan in December 18, 1931 he designated the defendant, Pearl Foster, as his beneficiary stating in the beneficiary designation that she had no relationship to him. The record further shows that on January 1, 1941 Standard Oil Company of New Jersey and The Equitable Life Assurance Society of the United States entered into a new group insurance program which was in fact a continuation of the original one whereby all employees were required to sign a new application for insurance which was effective January 1, 1941. This new application had written into a preference schedule for beneficiaries as mentioned above.
For the above and foregoing reasons the judgment of the Trial Court is affirmed.
Affirmed.