307 So.2d 611 (1973)
Maria Haydee CORTES
v.
Stanley E. FLEMING, a/k/a Egon Stanley Migocky.
No. 52963.
Supreme Court of Louisiana.
September 24, 1973.
Dissenting Opinion October 5, 1973.
On Rehearing December 2, 1974.
*612 William F. Wessel, Earl J. Higgins, New Orleans, for plaintiff-applicant.
Richard J. Boutall, Metairie, for defendant-respondent.
Vezina, Bordelon & Carimi, Owen J. Bordelon, Jr., Gretna, as amicus curiae.
Walter B. Stuart, IV, New Orleans, for absent heirs.
BARHAM, Justice.
The question posed here is whether or not alimony is a civil effect of a marriage which may be awarded the good faith wife as an incident to an annulment proceeding. We answer affirmatively.
On March 3, 1965, plaintiff and defendant were married in Managua, Nicaragua. At the time of that ceremony, Fleming was legally married to another. Immediately upon discovering this bar to her marriage, plaintiff filed a suit for annulment; coupled with the demand for annulment, alleging her good faith, was a demand for permanent alimony. The Civil District Court for the Parish of Orleans, Division C, annulled the marriage, found that plaintiff was in good faith in entering the marriage, and awarded her as a putative wife, permanent alimony in the amount of $300 per month. He appealed to the Fourth Circuit Court of Appeal on the question of alimony awarded. That court reversed, holding that a putative wife could not recover permanent alimony in an action to annul a marriage. 267 So.2d 236 (La.App., 1972). We granted writs.
Civil Code Articles 110 to 118 speak of nullity of marriages. Article 117 provides:
"The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith."
Article 118 provides:
"If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."[1]
Civil Code Article 119, under the title, "Of the Respective Rights and Duties of Married Persons" provides:
"The husband and wife owe to each other mutually, fidelity, support and assistance." *613 (Emphasis here and elsewhere supplied)
We have broadly construed the putative marriage provision of our Civil Code in favor of the children of the marriage and the parties in good faith in determining the civil effects of such a marriage.[2] The jurisprudence has declared the following to be civil effects which flow from putative marriage: the legitimacy of the children. Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); Succession of Gibson, 186 La. 723, 173 So. 185 (1937); Miller v. Wiggins, 149 La. 720, 90 So. 109 (1921); Texas Co. v. Stewart, 101 So.2d 222 (La.App., 4th Cir. 1958); the right of the putative wife to claim workmen's compensation from her husband's employer. Fulton Bag and Cotton Mills v. Fernandez, 159 So. 339 (La.App., 4th Cir. 1935). See also Jackson v. Swift and Co., 151 So. 816 (La.App., 2nd Cir. 1934); the right of the putative wife to her proportionate share of the community property. Texas Co. v. Stewart, supra; Prince v. Hopson, 230 La. 575, 89 So.2d 128 (1956); Succession of Fields, 222 La. 310, 62 So.2d 495 (1952); Succession of Chavis, supra; Patton v. City of Philadelphia and New Orleans, 1 La.Ann. 98 (1846); the right of the putative wife to inherit as a wife in the succession of the husband. Succession of Navarro, 24 La.Ann. 298 (1872); Kimball v. Folsom, 150 F.Supp. 482 (D.C. 1957); the right of the putative wife to be considered as the "widow" under her husband's insurance policy. Jones v. Equitable Life Assurance Society of the United States, 173 So.2d 373 (La.App., 1st Cir. 1965); cert. denied, 247 La. 1019, 175 So. 2d 302 (1965); the right of the putative wife to the marital portion, when she is otherwise qualified. Smith v. Smith, 43 La.Ann. 1140, 10 So. 248 (1891).
Although the Code articles appear to dispose clearly of the issue before us, i.e., within its intendment of civil effects is contemplated alimony, and although the above cases declaring specific civil effects of a marriage would also by analogy clearly appear to contemplate that alimony would be a civil effect of a putative marriage, there are cases cited to us which hold to the contrary. However, a perusal of this jurisprudence will establish that it is not reliable as valid judicial interpretation.
In State v. Barilleau, 128 La. 1033, 55 So. 664 (1911), considering jurisdiction of criminal prosecution for alimony for the child of a wife of a marriage under an annulment attack in a civil suit, the court held that the juvenile court had jurisdiction to enforce the wife's claim for maintenance for the child under Act 34 of 1902. This was the only issue before the court. The wife claimed nothing for herself in this prosecution, however, that court proceeded, in dictum, to state that an award for alimony for the wife as well as support for the child was not incidental to a suit to annul the marriage. The court cited Articles 148 and 160 of the Civil Code which treat only of the right of a wife to alimony in a separation or in a divorce proceeding. The child's right to alimony is fixed by Articles 227, 230, 231 and other provisions treating of paternal authority. The child, having a right established under those articles, could not have that right affected by the remedy afforded to a wife under articles dealing with separation and divorce. The court, in Barilleau, cites three totally inapposite cases as authority for holding that a demand for alimony is not incidental to a suit for annulment of marriage. Not only was the holding erroneous, but as previously stated, it was made in passing and unnecessary to a determination of the issue before the court. The three cases are: *614 State ex rel Hill v. Judge, 114 La. 44, 38 So. 14 (1905); State ex rel Stuart v. Judge, 50 La.Ann. 559, 23 So. 445 (1898); and State v. Seghers, 124 La. 115, 49 So. 998 (1909), which only concern themselves with the distinction between the award for support in the suit for separation from bed and board under Article 148, and the award of alimony in a suit for divorce under Article 160. It should be noted that the cases cited by Barilleau, and Barilleau itself, never cite nor consider the effect of the articles pertinent to a putative marriage, which give to a good faith wife of an annulled marriage, all of the civil effects of that marriage.
The first case which follows Barilleau, State v. Donzi, 133 La. 925, 63 So. 405 (1913), cites, without any discussion, the Barilleau case as authority for holding that a defendant in a criminal prosecution, under Act 34 of 1902, cannot present evidence of a legal impediment to the marriage attributable to the wife in order for him to prove that the wife was without "just cause". Monteleone v. O'Hanlon, 159 La. 796, 106 So. 308 (1925), in holding that a reconventional demand for separation in an annulment suit was improper, dismissed the alimony demand in passing, with only this authority, "the issue here involved has been set at rest in State v. Barilleau".
In State v. Ponthieaux, 232 La. 121, 94 So.2d 3 (1957), determining jurisdiction in a non-support proceeding in juvenile court, the court stated: "Alimony is not an incident to a suit to annul a marriage and is, therefore, not recoverable in such a proceeding", citing State v. Barilleau and Monteleone v. O'Hanlon.
Thus it may be seen that these cases began with erroneous dictum and follow through with acceptance of the dictum as total authority without recourse to the Civil Code articles which we interpret here, Articles 117, 118 and 119. The cursory and sometimes unwarranted consideration given by these cases to the serious issue before us requires us to closely scrutinize the statements and holdings on that issue in those cases. We are required by codal mandate to resolve this problem under the Code and not merely by reference to jurisprudence. Civil Code Article 1.
Argument is made that since alimony for the wife is only provided statutorily (codally) as ancillary to a divorce proceeding, it cannot be a civil effect of a marriage but is an effect of the divorce. That argument falls in the face of the express language of Civil Code Article 119.[3] Moreover, if this rationale were worthy of consideration we would have to say that the right of the putative wife to be considered as the widow under her husband's insurance policy, in Jones v. Equitable, supra, is not a civil effect of the marriage but an effect of the death.
More closely in point, in Smith v. Smith, supra, we held the widow's portion, or the marital portion, i.e., the right of a wife to claim one-fourth of her husband's succession when she is in necessitous circumstances, is a civil effect of the marriage. The court said:
"The words `civil effects' are used without restriction, and necessarily embrace all civil effects given to marriage by the law; or, in the language of Marcade in commenting on the identical article in the French Code, such a marriage, `although actually null, has the same effects as if it were not null,the ordinary effects of a valid marriage.

*615 * * * Every marriage, though invalid, if contracted in good faith, produces the effects of a valid marriage in the interval between the celebration and the judicial declaration of nullity. When once such declaration intervenes, the marriage produces no further effect; but, be it understood, the effects produced remain forever.' 1 Marcadé, 525."
The court there admitted that the marital portion under our Code article 2382 was derived from Spanish law, and that in the Spanish law there was no general provision giving civil effects to good faith parties of putative marriages. They admitted that under Spanish law only the legitimate wife under a valid marriage could claim the maritial portion. They reasoned, and correctly so, that the controlling factor for determining whether or not the putative wife could claim the marital portion was not the article which established the marital portion, but rather the Codal provisions taken from the French which established the rights of the good faith parties in putative marriages. Thus, the marital portion was recognized as a part of the civil effects of marriage.
In France, alimony has been spoken of as a pension, damages or indemnity. I Planiol, Civil Law Treatisé, no. 1111, 1259-62 (La.St.L.Inst. trans. 1959); II Planiol et Ripert, Traite Pratique de Droit Civil Francais, no. 258 (2d ed. 1952); II Baudry-Lacantinerie, Traité Thé orique et Pratique de Droit Civil, no. 1929 (2d ed. 1900).
In France, when both spouses to a null marriage are in good faith, alimony cannot be claimed of one party by the other. (Planiol, supra, no. 1111). To the contrary, if the marriage is annulled and one spouse is in good faith and the other spouse is in bad faith, the one in good faith is entitled to alimony as a pension or indemnity from the other. There is disagreement as to the Codal basis for this civil effect of the marriage evolving upon the good faith party. The writers and the courts have all reached the same results, i.e., awarding alimony to the one party in good faith, but they differ as to whether this award comes as damages under their code article 1382, our Code article 2315, or by analogy their code article 301, our Code article 160, or their code articles 201 and 202, our Code articles 117 and 118. II Baudry-Lacantinerie, Traité Théorique et Pratique de Droit Civil, no. 1923, 1929 (2d ed. 1900); VII Aubry et Rau, Cours de Droit Civil Francais, no. 460, note 17 bis. (5th ed. 1913); II Carbonnier, Droit Civil 110 (1955)[4]; II Planiol et Ripert, Traite Pratique de Droit Civil Francais, no. 336 (2d ed. 1952)[5]; I Marty et Raynaud, Droit Civil, no. 126 (2d ed. 1967); I Planiol, Civil Law Treatise, no. 1111 (La.St.L. Inst. trans. 1959)[6]; Juris-Classeur Civil, *616 Art. 34 à 215 du Code Civil, Art. 201-202, no. 62, 69 (1972).
The court, in Rouen, 9 April 1887, founded its decision on corresponding articles to our 117 and 118 after the lower court, Tribunal Evreaux, had based its judgment on their corresponding article to our 2315. The Tribunal of Seine, 17 November 1926, based its judgment on damages as provided in our article 2315.[7] Tribunal de Grande Instance de la Seine, 1 July 1965, found that the wife not entirely in good faith could not recover alimony because of the nullity of the marriage, citing articles of the French code from which our articles 117 and 118 are derived, but speaking in terms of "damage for the prejudice".
We are convinced that the pension, indemnity or damage right which gives rise to alimony is a fruit of a putative marriage which can be claimed by a blameless wife against the party who was in bad faith in contracting the marriage which is declared null. That the right of support or maintenance is established at the moment of the marriage and is an element of the obligations of the parties to one another during the marriage, is clearly established by Civil Code Article 119. It is an effect of the marriage and it is a civil effect of the marriage upon termination of a null marriage when one party is in good faith and the other is in bad faith. Maintenance, support and alimony are not mere appendages to separation and divorce proceedings, but they are established at the confection of the marriage.
We have several sources of the Code upon which to found the right of this good faith wife to alimony when the marriage is declared null and the other party is in bad faith.[8] Looking directly to Civil Code Articles 117, 118 and 119, it is apparent to us that they clearly envision alimony as a civil effect. We can also, through analogy with Article 160, establish that alimony is a civil effect going to the party in good faith in an annulment proceeding. We can, without regard to Articles 117 and 118, base an award of alimony to a good faith wife of a putative marriage in an annulment proceeding when the husband is in bad faith upon Article 2315.
As we have previously noted and as can be ascertained from Louisiana cases previously cited which define civil effects in specific instances, our courts broadly construe the civil effects which flow from a putative marriage to the party in good faith. We hold that the Civil Code dictates that alimony is a civil effect of the marriage in favor of a good faith wife of that putative marriage when the other party is in bad faith.
We further hold that this right to alimony may be presented in a suit for annulment of the marriage. We specifically overrule State v. Barilleau, 128 La. 1033, 55 So. 664 (1911), State v. Donzi, 133 La. 925, 63 So. 405 (1913), Monteleone v. O'Hanlon, 159 La. 796, 106 So. 308 (1925), and State v. Ponthieaux, 232 La. 121, 94 So.2d 3 (1957), insofar as they are contrary to the views and holdings here expressed.
For the reasons assigned, we reverse the judgment of the court of appeal and reinstate the judgment of the Civil District Court for the Parish of Orleans. All costs are assessed against the defendant.
SANDERS, C. J., dissents and assigns written reasons.
SUMMERS, J., dissents and assigns reasons.
*617 SANDERS, Chief Justice (dissenting).
The fallacy in the majority opinion, as I construe it, is that it erroneously bases the wife's alimony after divorce on Article 119 of the Louisiana Civil Code.
Article 119 provides:
"The husband and wife owe to each other mutually, fidelity, support and assistance."
The article appears in Title IV, Of Husband and Wife, under the Chapter heading, "Of the Respective Rights and Duties of Married Persons." The article, itself, refers to husband and wife. Hence, it is apparent that the article relates to support during the marriage, not to alimony after divorce. Alimony after divorce is a gratuity, in the nature of a pension. Such has been the uniform jurisprudence interpreting the code articles. Brown v. Harris, 225 La. 320, 72 So.2d 746 (1954); Smith v. Smith, 217 La. 646, 47 So.2d 32 (1950); Slagle v. Slagle, 205 La. 694, 17 So.2d 923 (1944); Scott v. Scott, 197 La. 726, 2 So.2d 193 (1941); Fortier v. Gelpi, 195 La. 449, 197 So. 138 (1940); Player v. Player, 162 La. 229, 110 So. 332 (1926); Burris v. Burris, 197 So.2d 89 (La.App. 1st Cir. 1967).
In Player v. Player, supra, this Court stated:
"As the marriage is forever dissolved, there is no obligation arising from it. The law accords, not alimony in such a case, but a pension, to the unfortunate spouse who has obtained the divorce. This pension becomes revocable in case it should become unnecessary, and in case the wife should contract a second marriage. State v. Judge, 114 La. 44, 38 So. 14; 3 Laurent, p. 403; Act 247 of 1916.
"On the other hand, the alimony paid to the wife pending a suit for divorce arises solely from the marriage relation and the duty of the husband to support her. It may be defeated by the reconciliation of the parties. C.C. arts. 148, 152, and 119."
Article 160 of the Louisiana Civil Code is the statutory basis for alimony after divorce. It provides:
"When the wife has not been at fault, and she has not sufficient means for her support, the court may allow her, out of the property and earnings of the husband, alimony which shall not exceed one-third of his income when:
1. The wife obtains a divorce;
2. The husband obtains a divorce on the ground that he and his wife have been living separate and apart, or on the ground that there has been no reconciliation between the spouses after a judgment of separation from bed and board, for a specified period of time; or
3. The husband obtained a valid divorce from his wife in a court of another state or country which had no jurisdiction over her person.
"This alimony shall be revoked if it becomes unnecessary, and terminates if the wife remarries."
The language of the article demonstrates that such alimony is an effect, not of marriage, but of divorce. See Moore v. Moore, 18 La.Ann. 613 (1866). Alimony is so characterized by Article 159 of the Louisiana Civil Code.
In an annulment, the purported marriage is void ab initio. Rather than terminating marriage, as in divorce, the Court decrees that it never existed.
Moreover, civil effects from a bigamous marriage cease to flow from the time there is knowledge of the impediment. Brinson v. Brinson, 233 La. 417, 96 So.2d 653 (1957); Succession of Pigg, 228 La. 799, 84 So.2d 196 (1955); Succession of Fields, 222 La. 310, 62 So.2d 495 (1952); Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949); Succession of Chavis, 211 La. 313, 29 So.2d 860 (1947); Jones v. Squire, 137 La. 883, 69 So. 733 (1915); Eason v. Alexander Shipyards, 47 So.2d 114 (La. *618 App., 4th Cir. 1950); Howard v. Ingle, 180 So. 248 (La.App., 2nd Cir. 1938).
I conclude, therefore, that no adequate basis can be found in Articles 117, 118, 119, and 160, LSA-C.C., for an indefinite award of alimony in a marriage annulment proceeding.
As an alternative, the majority suggests that the award could be considered as one for damages under Article 2315 of the Louisiana Civil Code, relating to delictual responsibility. Treating a damage award in favor of the wife against the husband as a civil effect of a putative marriage seems to strain legal theory too far. I would also reject this postulation.
In my opinion, the majority erroneously awards alimony, payable for an indeterminate number of years after the wife has full knowledge of the bigamous marriage.
Since 1911, this Court has consistently held that alimony for a putative wife is not recoverable in an action to annul a marriage. See State v. Ponthieaux, 232 La. 121, 94 So.2d 3 (1957); Monteleone v. O'Hanlon, 159 La. 796, 106 So. 308 (1925); State v. Donzi, 133 La. 925, 63 So. 405 (1913); State v. Barilleau, 128 La. 1033, 55 So. 664 (1911). I find no adequate reason to overrule these decisions.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
In my view awards of alimony to a putative wife in good faith should be authorized by the legislature; such an award should not be based upon a tenuous interpretation of a broad principle governing other rights.
I respectfully dissent.

ON REHEARING
CALOGERO, Justice.
Plaintiff and defendant were married in Managua, Nicaragua on March 3, 1965. Unknown to plaintiff, defendant was still legally married to another woman. Upon learning of this impediment to her marriage, plaintiff instituted a suit for annulment, demanding alimony.
The Civil District Court for the Parish of Orleans annulled the marriage, found plaintiff to be in good faith and awarded her alimony in the sum of $300.00 a month. It further rendered judgment in the sum of $1,220.00 for past due pendente lite alimony.
Defendant only appealed to the Fourth Circuit Court of Appeal that part of the judgment awarding $300.00 monthly alimony. That Court reversed, holding that a putative wife could not recover alimony in an action to annul a marriage. 267 So. 2d 236 (La.App. 4th Cir. 1972).
We granted writs, 263 La. 607, 268 So. 2d 673 (1972), and, on original hearing, reversed, holding that alimony is a civil effect of the marriage in favor of a good faith wife of that putative marriage when the other party is in bad faith.
An application for rehearing was filed by defendant's attorney, in which it was alleged for the first time that the defendant had died just prior to oral argument in this Court. By a per curiam opinion on the rehearing application we stayed further proceedings to permit the parties to establish defendant's death and to make a proper substitution of parties.
On November 5, 1973 the attorney for the deceased defendant filed with this Court a copy of defendant's death certificate. On December 18, 1973 plaintiff filed a pleading entitled "Motion to Compel Substitution of Party Defendant" in which he sought to have defendant/respondent show cause why the names and addresses of defendant's legal heirs or succession representatives should not be furnished counsel for petitioner. No action was taken on that motion.
Rehearing was granted in this case on January 11, 1974 because the original *619 judgment of this Court was rendered against a deceased party (the defendant) and, as such, was an absolute nullity. See Navarro v. Derbes, 211 La. 384, 30 So.2d 126 (1947) and cases cited therein.
When the case was called for rehearing argument on May 6, 1974 no proper substitution of parties had yet been made because of plaintiff's ignorance of the identity of defendant's legal successors(s). Such information was then made available to plaintiff by counsel for the deceased defendant after he was directed to do so by the Chief Justice in open court.
Thereafter counsel filed a brief on behalf of the deceased defendant arguing, among other things, that the plaintiff's action for alimony abated on the death of the defendant, and that plaintiff could no longer enforce her right to alimony because the deceased defendant was unrepresented.
Rule XIII of this Court's rules incorporates the rules and procedures outlined in Articles 801 through 807 of the Code of Civil Procedure for the substitution of parties, including when a party dies.
Proceeding under the rules and procedures outlined in these Code of Civil Procedure articles, plaintiff presented to this Court a "Motion and Order to Summon Legal Successor of Deceased Defendant" on May 7, 1974. The Motion and Order was granted May 8, 1974. Service was made on Jennifer Kate Boutall, daughter of the deceased defendant (and, incidentally, the wife of the attorney for the deceased defendant) to appear and substitute herself for the deceased defendant within 30 days of service of the summons on her. Service was made on Mrs. Boutall by personal service on May 14, 1974. To this date, she has neither appeared nor substituted herself for the deceased defendant.
On July 3, 1974 plaintiff filed an additional "Motion and Order to Summon Legal Successor of Deceased Defendant/Respondent" alleging that Edgar Anthony Fleming, was a son and heir of the deceased defendant who should also be substituted as party defendant (his sister, Jennifer Kate Boutall, had already been substituted). Because the whereabouts of the son were unknown the Court was asked to appoint an attorney to represent Edgar Anthony Fleming and all other heirs, succession representatives, and other persons who may have any interest in the succession of the deceased defendant.
That motion and order was granted on July 8, 1974 and an attorney was so appointed.
The Court appointed attorney attempted to ascertain the whereabouts of the person(s) whom he had been appointed to represent by writing defendant's daughter, Mrs. Boutall, and the attorney for the deceased defendant, and by running an advertisement in the Times-Picayune and States-Item newspapers. He received no response to his diligent inquiries. He has appeared by filing a brief on behalf of the absent, the undiscovered and/or the non-appearing successors of the deceased defendant, and praying that the judgment of the Court of Appeal denying alimony should be affirmed.
The interest of the deceased defendant (and/or his successors) is no longer unrepresented. Service of a summons to appear and represent such interest was made on the deceased's daughter, and an attorney was appointed to represent the absent son as well as any other party having an interest in the estate of the deceased defendant. This Court possesses the authority to render judgment on the merits inasmuch as personal service was made on the daughter,[1] and an attorney was appointed to represent the absent son and all other person(s) having an interest in the *620 succession of the deceased defendant. C.C. P. Art. 804.
The attorney of record for defendant, who has claimed, and perhaps accurately, that defendant had been technically unrepresented in these proceedings following his death on June 12, 1973, argues that plaintiff's right to collect post-annulment alimony for the period prior to defendant's death abated on the death of the defendant inasmuch as there was no judgment condemning defendant to pay alimony at the time of his death (the judgment of the Civil District Court awarding alimony having been reversed by the Court of Appeal), and because the deceased defendant was unrepresented since Rule XIII of our Rules had not been complied with.
He also claims, of course, that post-annulment alimony for any period following defendant's death is not recoverable.
We agree with this latter contention. The obligation of paying alimony to become due is extinguished by the death of the party condemned to pay it. See 1 Planiol § 686 (La.St.Law Institute transaltion), Succession of Carter, 32 So.2d 44 (La. App. 1st Cir. 1947). The defendant herein died on June 12, 1973. The obligation to pay the plaintiff alimony to accrue on or after that date died with him.
The contention that Rule XIII had not been followed no longer has merit, as indicated hereinabove.
Accordingly we must consider whether post-annulment alimony for the period prior to defendant's death is due plaintiff. This is, to the extent unpaid past due alimony under the trial court judgment, the effect of which is here reinstated by our reversal of the Court of Appeal's contrary decision. The right of the plaintiff to the alimony past due is a property right which is not defeated by the death of defendant. See Pisciotto v. Crucia, 224 La. 862, 71 So.2d 226 (1954); Wainwright v. Wainwright, 217 La. 563, 46 So.2d 902 (1950); Gehrkin v. Gehrkin, 216 La. 950, 45 So.2d 89 (1950); Vinet v. Vinet, 184 So.2d 33 (La.App. 4th Cir. 1966); Allen v. Allen, 136 So.2d 168 (La.App. 4th Cir. 1962); 1 Planiol § 686. See also C.C.P., Art. 3945.
We find no merit in the argument presented by attorney for defendant's successors that alimony is an effect of divorce, not marriage.
Rather we adhere to our decision on original hearing for the reasons stated in our original opinion, whereat we specifically overruled State v. Barilleau, 128 La. 1033, 55 So. 664 (1911); State v. Donzi, 133 La. 925, 63 So. 405 (1913); Monteleone v. O'Hanlon, 159 La. 796, 106 So. 308 (1925), and State v. Ponthieaux, 232 La. 121, 94 So.2d 3 (1957), insofar as they are contrary to the views and holdings therein expressed.
For the reasons assigned we reverse the judgment of the Court of Appeal and reinstate the judgment of the Civil District Court for the Parish of Orleans, except that the $300.00 monthly post-annulment alimony award is terminated as of June 12, 1973, the date of defendant's death.
The fee and/or expenses of the attorney appointed by this Court to represent defendant's successors shall be paid by plaintiff. Such fee and/or expenses as well as all other costs in these proceedings are assessed against the succession of defendant.
SANDERS, C. J., dissents, adhering to his dissenting views expressed on original hearing.
SUMMERS, J., dissents and adheres to the reasons assigned in my original dissenting opinion.
NOTES
[1] These articles are identical to the Code Napoleon of 1804 Articles 201 and 202. They were omitted from the Louisiana Civil Code of 1807, but were included in the 1825 Code with the redactors' comments in the Project under proposed Article 118: Project of the Civil Code of Louisiana of 1825, p. 10, "We have added that the marriage declared null, produces also its civil effects in favor of the party who has acted in good faith. This disposition, taken from the French Code, is evidently equitable. For example, it would be contrary to justice and to good morals, that a man, already married, who should obtain a second wife by the promise of a donation, should not be obliged to pay it, in consequence of his marriage being null."
[2] The question of the necessary element of good faith on the part of plaintiff is not presented to us, moreover, the record before us establishes her good faith and the husband's bad faith.
[3] I Planiol, Civil Law Treatise, no. 1093 (La. St.L.Inst. trans. 1959). Planiol analogizes the annulment of a putative marriage to a divorce. "Thus, it is recognized that the null marriage, contracted in good faith, produces its effects, as if it had been valid until the judicial sentence declares it to be null. The sentence terminates the marriage, as would a divorce. The marriage henceforth produces no effect. But those it had produced subsist. Acquired rights are not destroyed (Tribunal Dijon, May 13, 1907, D. 1910.2.196; P. and S. 1909.2.324). In other words, on account of the good faith of the parties, the nullity takes place without retroacticity. Such a marriage is called a putative marriage (putativus, deemed to be what it is not)."
[4] "The confrontation between the spouse of good faith and the spouse of bad faith strongly resembles the situation which, in the divorce, opposes the innocent to the culpable party. What makes the analogy even stronger, is that the courts occasionally condemn the spouse of bad faith to pay a pension to the spouse of good faith on the basis of article 1382, by holding the spouse of bad faith responsible for the damage caused as a result of the annulment of the marriage."
[5] "* * Pension alimentaire.Les decheances de l'epoux de mauvaise foi rapprochent sa situation de celle d'un époux aux torts duquel le divorce est prononce Comme celui-ci, l'époux de mauvaise foi est responsable du dommage que l'annulation du mariage entraine pour son conjoint, soit au point de vue moral, soit au point de vue pécuniaire. En réparation de ce préjudice, il peut, comme l'époux contre lequel le divorce est prononcé, être condamné è servir une pension a l'epoux de bonne foi (1). Cette pension n'est pas fondée sur l'article 212, le devoir de secours ayant disparu, mais sur la responsabilité des délits civils (art. 1382) (2)."
[6] In discussion of the effects when both spouses are in good faith, Planiol states that one cannot claim alimony from the other. He then states, "See however Rouen, April 9, 1887 (S. 87.2.235), which finds its justification in the special reasoning that the spouse, creditor of the alimony, was the only one in good faith and was entitled to an indemnity on account of the breaking off of the marriage".
[7] The tribunal made a lump sum alimony award of 25,000 francs as damages for the prejudice caused by the bad faith husband.
[8] We have not before us the more difficult question which will be presented when both parties are in good faith.
[1] Her failure to appear does not deny this Court authority to render judgment. It is no longer required that an attorney be appointed to represent a summoned legal successor who fails to appear when personal or domiciliary service has been made as was done in this case. See La.C.C.P. Art. 804 and comment.