TATE, Judge.
The issue of this appeal is whether certain property acquired by a deceased wife while living separate and apart from her husband was her separate property (and thus inherited by her heirs), or whether instead it is community property and thus devolves to her former husband. The husband’s appeal questions the trial court’s determination that two lots acquired in the wife’s name were her separate property.
The decedent (“Annie”) and the husband (“Louis”) were married in 1941. The evidence shows that they separated in 1946 and never lived together again. Annie died in 1963, intestate and childless. During her lifetime she had acquired five lots in her own name as her separate property, in 1936, 1939, 1943, 1949, and 1957, respectively.
An administration of her succession was opened. The inventory showed that all five lots were her separate property. Her former husband Louis intervened, claiming that the three lots acquired during the marriage (i. e., in 1943, 1949, and 1957) were community property devolving to him. The trial court recognized his claim to the 1943-lot because it had been acquired when the couple were still living together. However, Louis’s claim was dismissed as to the 1949 and 1957 lots upon a holding that they had been acquired and paid for with Annie’s separate earnings while she was living separate and apart from her husband.
*864 The husband alone appeals. The only issue is whether the wife’s administratrix has rebutted the presumption that the 1949 and 1957 lots were community property because acquired during the marriage.
Under our Louisiana community property law, all property acquired during a marriage is presumed to be community, with certain limited exceptions, such as property inherited by or donated to the wife or acquired by her with her separate funds. LSA-C.C. Arts. 2334, 2402, 2405. The burden of overcoming the presumption of the community nature of property acquired during the marriage rests upon the party asserting its separate and paraphernal nature; to satisfy this heavy burden, the proof must be strict, clear, positive, and legally certain that the property was acquired with separate and paraphernal funds. Monk v. Monk, 243 La. 429, 144 So.2d 384; Prince v. Hopson, 230 La. 575, 89 So.2d 128, and jurisprudence there referred to.
The deceased wife’s administratrix bases her claim that the lots formed part of the wife Annie’s separate estate upon the provisions of LSA-C.C. Art. 2334 that “ * * The earnings of the wife when living separate and apart from her husband * * * .and the property purchased with all funds thus derived, are her separate property. =1= * *»
The evidence shows the following: Annie ■was regularly employed as a housemaid all her life. In addition, a regular and not insubstantial additional source of income were Annie’s earnings both as a fortune teller (50f! or $1.00 per fortune) and also as a noted “traiteur” (Acadian vernacular for one who cures illness by spells or prayers, the evidence showing that a successful cure earned sometimes, although rarely, as high as $20). Before and after she lived with the intervenor-appellant Louis, as well as during the time they lived together as man and wife, Annie was thrifty and accumulated property, five lots in all as previously noted.
On the other hand, the evidence shows that the husband Louis worked only spasmodically. He himself estimated that his earnings amounted to about $1000 per year; this estimate may have been high, judging by his income tax withholding statements filed in the record. Pie himself admits that the only money he gave to his wife after they separated was in 1950, when he says he gave her $20 or $30.
The husband Louis claims that the wife’s administratrix has not borne her burden of proving that the 1949 and 1957 lots were acquired through the wife’s separate earnings by the clear, convincing, and legally certain proof required by law. The basis of this contention is that the exact amounts the wife earned were not proved by the testimony of her niece who lived with her for part of the time and of her neighbors, who merely testified generally as to her thrift, her steadiness in work, her busyness in her sidelines, and the sources of her income.
Despite this contention, the evidence does successfully negative by clear and convincing proof any other source of the funds used to acquire the 1949 and 1957 lots than the wife Annie’s separate earnings while living separate and apart from her husband Louis. On the one hand, Louis himself admits that he contributed practically nothing to Annie subsequent to their separation; the evidence of his lack of income fairly well rules out his own earnings as the source of these funds. On the other hand, the evidence as to the wife’s steady work, thrift, and the consistent sources of additional income to her indicate her own earnings and income while separated were the almost certain source of the funds used to buy the property, taking also into consideration that the general evidence as to this is corroborated objectively by records of her accumulations, her payments of mortgages, and her payments for improvements, both before she married Louis and after she separated from him.
*865 Under similar circumstances, the courts have held that the required clear and convincing proof has been made that the wife’s separate earnings were the source.of the funds used by her to purchase property in her name after she and her husband had separated. Succession of Smith, 247 La. 921, 175 So.2d 269; Succession of Marshall, La.App. 4 Cir., 174 So.2d 234; Succession of Evans, La.App. 1 Cir., 171 So.2d 738.
Admittedly, Fleury v. Fleury, La.App. 4 Cir., 131 So.2d 355, cited to us by the appellant Louis, does somewhat support his contention that general un-itemized testimony as to the wife’s separate earnings is not legally certain proof as required by law. Nevertheless, the facts of that case show the wife’s generalized testimony of separate earnings was not corroborated by other witnesses and by surrounding circumstances, as in the present situation. Also, in Fleury, by the wife’s own admissions, a substantial portion of the funds used to acquire the property had been saved from her earnings while she and her husband were still living together; the purchase price there was thus community, insofar as any subsequently-acquired separate funds had lost their identification as such by being commingled with substantial community funds. This is not the situation before us now.
With some confidence, however, the appellant husband points out that the 1943 lot is admittedly community property, having been acquired (even though with the wife’s earnings) while Louis and Annie were living together. The evidence further shows that, at least from 1954 to 1961, a house on the property was rented at $12 per month, with the rent being upped to $24 when indoor bathrooms were installed in 1961. The appellant Louis contends that, since the community rentals from this lot were admittedly received by the wife, therefore the wife has not negated her burden of disproving community funds as the source of the price paid for the lots acquired by Annie while separated from her husband.
In the first place, there is no evidence that the community property was rented before 1954. As to the lot acquired in 1949 for $350, we do not think that the mere ownership of a community lot, without any indication whatsoever in the record of any income from it at the time, is sufficient to cast doubt on the clear and convincing proof that the sole source of funds for the 1949 lot’s purchase price was the wife Annie’s separate earnings.
A closer question is presented as to the 1957 lot. It was acquired for $5000, with $1000 being paid in cash and the balance almost entirely paid in monthly installments of between $50 and $100 up until mid-1962. However, from the record as a whole it is apparent that the net income from these community rentals (being less insurance, taxes, and repairs, and subject to reduction for periods of inoccupancy) was relatively insignificant.
Under all the circumstances, we think that the source of the funds for the purchase of this 1957 lot should be considered as the wife’s separate earnings also, by application of the principle that, when by far the predominant source of the funds is shown to be from separate funds, the possible inclusion of a relatively small amount of community proceeds is considered as too inconsequential or insignificant to constitute commingling and to warrant the determination that the entire amount of the funds is community property. Slater v. Culpepper, 233 La. 1071, 99 So.2d 348 (syllabus 5) ; Succession of Land 212 La. 103, 31 So.2d 609 (syllabus 9); Giamanco v. Giamanco, La.App. 3 Cir., 131 So.2d 159 (syllabus 6). (We do not have before us now whatever right the husband Louis may have had to an accounting from his wife Annie’s estate for these community rentals received by her.)
In summary, therefore, the trial court correctly concluded that the administratrix had borne her burden of proving by clear and convincing proof that the deceased wife *866 acquired the lots in 1949 and 1957 through her separate earnings while she was living separate and apart from her husband. They were therefore not community property, hut instead formed part of the wife’s separate estate to which her husband, the intervenor-appellant, has no claim.
Accordingly, we affirm the district court’s dismissal of the appellant husband’s intervention insofar as he sought recognition of his claim to ownership or inheritance of these two lots. The costs of this appeal are to be paid by the intervenor-appellant.
Affirmed.