275 So.2d 489 (1973)
Mildred A. FARRELL
v.
James M. FARRELL.
No. 9273.
Court of Appeal of Louisiana, First Circuit.
March 19, 1973.
*490 John E. Seago, Lindsay & Seago, Baton Rouge, for appellant.
Gerard E. Kiefer, Forrest & Kiefer, Baton Rouge, for appellee.
Before LANDRY, TUCKER and PICKETT, JJ.
TUCKER, Judge.
Plaintiff Mrs. Mildred A. Farrell filed a petition seeking a separation a mensa et thoro from the defendant James A. Farrell, asking for custody of the child born of the marriage, and for alimony for herself and for the child. The defendant filed an answer and reconventional demand, denying the separation and asking for an annulment of the marriage between the parties. Subsequently he filed an exception of no right of action. Upon trial of the exception the defendant introduced as Exhibit 1 a certified copy of the divorce decree between himself and his first wife Ellen Porter Farrell, which was rendered in open court with all parties present on February 8, 1956, but not signed until two years later on May 20, 1958. As Exhibit 2 defendant introduced a copy of the marriage certificate issued to himself and the plaintiff, showing the date of their marriage as February 11, 1956. On the basis of this evidence the trial judge sustained defendant's exception of no right of action and proceeded to hear evidence on defendant's reconventional demand for annulment of his marriage to plaintiff. On April 12, 1972, the trial judge annulled the marriage between the parties herein as prayed for by defendant. The trial judge also declared that the parties were in good faith, and that, therefore, all civil rights would flow from his putative marriage, including One Hundred Thirty-five and No/100 ($135.00) Dollars per month as alimony for the child born of the putative marriage.
From this judgment plaintiff appealed alleging error by the trial court (1) in sustaining defendant's peremptory exception of no right of action, thereby dismissing plaintiff's suit for separation; (2) in finding that the defendant was not legally divorced from his first wife, Ellen Porter Farrell, until May 20, 1958; and (3) in annulling the marriage existing between the parties herein.
We agree with the trial court in sustaining defendant's exception of no right of action. Although the allegations of fact made by plaintiff that she and defendant were issued a marriage license, went through a marriage ceremony, and lived together as husband and wife thereafter, were regarded as true for the purposes of hearing the exception, the trial judge was not obliged to accept the plaintiff's allegation of marriage, because that was a conclusion of law under the circumstances. It is too well-settled to require any citation of authority that allegations which are conclusions of law will not be accepted as true on the trial of exceptions.
Plaintiff's allegations set forth the legal conclusion of a valid marriage, which cannot be considered as absolute, since defendant's exhibits had the effect of raising the question of whether or not his first marriage to some one else had been dissolved at the time that he attempted to contract a second marriage to plaintiff. According to Civil Code Article 93 "Persons legally married are, until dissolution of marriage incapable of contracting another. . . ." If defendant were under an impediment of nullity and incapable of contracting a valid marriage with plaintiff, ipso facto her marriage, as set *491 forth in her allegations, was not a legal marriage. Obviously only legally married persons may bring a suit for separation a mensa et thoro. The second question which defendant's exhibits raised, therefore, was whether or not plaintiff came within that class of persons who have the right to bring the cause of action alleged. This is the purpose envisioned by Article 927 of the Code of Civil Procedure. Levert v. Levert, 156 So.2d 284 (La.App. 4th Cir. 1963), cited by plaintiff-appellant, in her argument for the overruling of defendant's exception of no right of action, is not analogous to the present case. In the Levert case it was not the validity of a marriage which was at issue, but the validity of a Nevada divorce. No second marriage was involved. Clearly the plaintiff as wife in the Levert case had the right to bring a suit for alimony pendente lite. Her original status or capacity as wife was not questioned. For reasons given above we find that the defendant's exception of no right of action in the instant case was properly heard and disposed in the trial court.
The basic question of the whole case, however, is whether or not a judgment read and rendered in open court with all necessary parties present, is valid although not signed until two years later. Appellant contends that the divorce judgment was valid from the date of rendition; if not, that it was voluntarily executed by the living together of the parties herein for sixteen years immediately following defendant's purported divorce. Plaintiff cites Barraco v. Barraco, 173 La. 81, 136 So. 95 (1931) and Jackson v. Swift & Co., 151 So. 816 (La.App.2d Cir. 1934) in support. Plaintiff also argues that defendant cannot complain of a judgment in which he has acquiesced, citing Article 2085 of the Code of Civil Procedure and Rouse v. Rouse, 219 La. 1065, 55 So.2d 246 (1951) in support.
Historically in Louisiana a final judgment is not considered valid and can have no effect of any kind until signed. See Viator v. Heintz, 201 La. 884, 10 So.2d 690 (1942), and the cases cited therein, and also Stone, Comment, "The Distinction between the Rendition and Signing of Judgments in Louisiana," 24 Tulane L.R. 470 (1950). It is clear from the Preliminary Statement set forth immediately preceding Article 1911 of the Code of Civil Procedure (4 L.S.A.-C.C.P. p. 370) that the redactors of the Code of Civil Procedure did not intend to make any change in the effective time of judgment, which is the time of signing. Defendant's divorce from his first wife did not become effective until signed May 20, 1958.
We accord no persuasive effect to the three cases cited by appellant. In the isolated case of Jackson v. Swift the court said that the unsigned divorce decree therein was voluntarily executed and became definitive by the remarriage of both parties to it; then the court proceeded to equivocate as follows: "If we should be wrong about this [which we believe that the court was], it being established by the evidence that both Elijah and Mary were in good faith when they married and continued to live together in good faith for more than 25 years, they were putative husband and wife." (emphasis added) In other words the first statement of the court must be considered only as dictum. Even if the first statement of the court in Jackson were considered the prime basis of the decision in the case, it is only one in a long line of cases to the contrary and cannot be used for any support to plaintiff's position.
Barraco v. Barraco was a case decided under the old Code of Practice Article 567 (presently C.C.P. Art. 2085). The defendant therein took a suspensive appeal from the judgment of divorce which his wife had obtained, then remarried while the appeal was pending. The court held that he acquiesced in the original divorce judgment and had defeated his appeal. There was no mention as to whether or not, or when the divorce judgment had been signed. We do not find the facts of that case analogous *492 to the instant case, nor the conclusions of law applicable. In fact C.C.P. Art. 2085 is inapplicable altogether since it concerns limitations of appeals, which is not an issue of this case.
In the Rouse case plaintiff was trying to claim a portion of her first husband's succession, although they had been divorced by the decree of another state and plaintiff had remarried and lived for seventeen years in the second marriage. The court said that she was estopped to attack the validity of the divorce, and claim to be the widow in community of her first husband inasmuch as she had accepted the benefits of the divorce and acquiesced in its validity by remarrying herself later. The Rouse case is not analogous, however, because the defendant herein is not attacking the validity of his divorce; he is attacking the validity of his second marriage. Furthermore estoppel must be specifically pled (C.C.P. Art. 1005), which the plaintiff has not done in the instant case; nor has she sustained the burden of proving the facts upon which the estoppel is pled, nor shown affirmatively that she was misled by the facts and forced to act to her prejudice. The Rouse case is totally inapposite.
At the time that defendant went through a marriage ceremony with plaintiff on February 11, 1956, he was still married to Ellen Porter Farrell, because his divorce decree from her had not been signed, and, in fact, was not signed until May 20, 1958. Article 93 of the Civil Code has been interpreted by the jurisprudence of this state as setting forth an absolute nullity. A person who is married to one person not only is incapable of contracting another marriage, but the attempted second marriage is not susceptible of ratification or confirmation, whether express or implied. Clark v. Clark, 192 So.2d 594 (La.App. 3rd Cir. 1966) and Melancon v. Sonnier, 157 So. 2d 577 (La.App.3d Cir. 1963). The trial court was correct in annulling defendant's marriage to plaintiff on the evidence shown. C.C. Arts. 113, 114.
The record reveals that the Farrells did not know that their marriage was invalid until the Louisiana Department of Welfare so informed them in April, 1971, in the course of its investigation preparatory to their adopting a child. Defendant sought legal counsel and was informed that his marriage to plaintiff was a nullity. The Farrells discussed remarriage, but defendant later decided against it, and the Farrells ceased to live together on December 28, 1971. Rather than a case of voluntary execution of defendant's divorce decree, as alleged by plaintiff, we find this a classic example of a putative marriage under Louisiana jurisprudence. "The marriage which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith." C.C. Art. 117. We believe that the Farrells were in good faith in their putative marriage until April, 1971; therefore, all civil effects will flow to their child born of the marriage, and the trial judge's award of alimony to the child will be upheld.
For all the foregoing reasons the judgment appealed from will be affirmed.
Affirmed.