396 So.2d 1364 (1981)
Gary K. GALBRAITH, Plaintiff-Appellant/Appellee,
v.
Sally Jane McCown GALBRAITH, Defendant-Appellant/Appellee.
No. 14475.
Court of Appeal of Louisiana, Second Circuit.
March 23, 1981.
Rehearing Denied May 1, 1981.
*1366 Whitmeyer & Glassell by Claudius Whitmeyer, Shreveport, for plaintiff-appellant/appellee Gary K. Galbraith.
Kennedy, Goodman & Donovan, by Robert J. Donovan, Jr., Shreveport, for defendant-appellant/appellee Sally Jane McCown Galbraith.
Before PRICE, HALL and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied May 1, 1981.
PRICE, Judge.
At issue on this appeal is the validity of the marriage between plaintiff, Gary K. Galbraith, and defendant, Sally Jane McCown Galbraith. Plaintiff contends that their purported marriage is an absolute nullity since they were "married" before the divorce judgment dissolving his previous marriage had been signed. Both parties have appealed from a district court judgment decreeing their marriage a nullity, finding both spouses to be in good faith, and denying permanent alimony to the putative wife.
Plaintiff was awarded a judgment of divorce from Barbara Schaffer Galbraith in the First Judicial District Court, Caddo Parish, Louisiana, on April 13, 1976, which judgment was not signed by the court until the next day, April 14. On the afternoon of April 13, plaintiff and defendant exchanged marriage vows in Denton, Texas. The couple returned to Shreveport where they established their matrimonial domicile.
This circuitous and protracted litigation began on August 16, 1979, when plaintiff sued defendant in Caddo Parish District Court for a separation on the grounds of abandonment and cruelty. Defendant reconvened seeking a separation and pendente lite alimony on August 21, 1979. The district court rendered judgment on defendant's motion in a judgment filed September 11, 1979, awarding to her $350 alimony per month pending the outcome of the litigation. Defendant appealed that judgment to this court, and in a judgment rendered March 31, 1980, we amended the trial court's judgment in order to raise the monthly alimony payments to $500. Galbraith v. Galbraith, 382 So.2d 1042 (La. App.2d Cir. 1980).
While the defendant's appeal on the judgment for alimony was pending, plaintiff first questioned the validity of the marriage when he filed an action seeking to have the marriage of the parties declared an absolute nullity since they were purportedly married on April 13, 1976, a day before plaintiff's prior marriage was dissolved by the signing of a judgment of divorce on April 14, 1976.
Plaintiff's allegations of nullity were answered by defendant on November 19, 1979, when she averred her good faith and the concomitant deception of plaintiff and sought to be recognized as a putative spouse. La.C.C. Arts. 117, 118. Plaintiff amended his nullity action on January 7, 1980, to allege that defendant was in bad faith by marrying plaintiff on April 13, 1976, in Denton, Texas, in contravention of a Texas law which required a 30-day delay between divorce and remarriage. (Defendant's prior marriage was dissolved in Harris County, Texas by oral decree on March 12, 1976, and a written judgment was signed and filed on March 24, 1976.)
After the exchange of numerous motions and the rendering of two district court judgments on the motions ordering plaintiff to pay alimony which had accrued under the September 11, 1979, judgment, the district *1367 court decreed the marriage of the parties to be a nullity. In this judgment rendered June 6, 1980, the district court also decreed that both parties were in good faith in entering the purported marriage, and that defendant was entitled to the status of a putative wife. The pendente lite alimony awarded by the September 1979 judgment was ordered reduced as of October 16, 1979 (the date of plaintiff's petition for reduction) and terminated as of May 22, 1980 (the date of trial on the nullity action). Although found to be in good faith, defendant was denied permanent alimony because of the trial court's determination that she was not in necessitous circumstances.
Defendant moved for a new trial alleging that the trial court erred in terminating the temporary alimony before the nullity judgment had become final. This motion was granted and the district court amended and recast the judgment on August 20, 1980, in order to delete the order to terminate the temporary alimony. It is from this judgment that both plaintiff and defendant have appealed.
Defendant seeks a reversal of the nullity judgment and a remand for trial on the issues of separation and divorce. Defendant contends that public policy considerations necessitate upholding the validity of this marriage which was entered into after oral pronouncement of divorce but before signing of the judgment which followed some 24 hours later.
Plaintiff contends the trial court erred in finding defendant in good faith and in excluding plaintiff's evidence of defendant's alleged bad faith based on Texas law and seeks a remand for the purpose of determining whether defendant was in bad faith. Even if the defendant was in good faith, plaintiff alternatively contends that the trial court erred in reserving to defendant the right to claim permanent alimony at a later date. This argument is based on plaintiff's contention that alimony is not payable to a good faith putative wife from a putative husband who is also found to be in good faith. Plaintiff also contends the trial court erred in failing to discontinue the previously awarded temporary alimony past the date the defendant became aware of the impediment to their marriage. Plaintiff contends the trial court erred in failing to consider the issue of fault as it relates to defendant's right to seek permanent alimony. An additional specification of error assigned by plaintiff is that the trial court erred in assessing costs to the putative community.
The following issues are pertinent to the resolution of this appeal:
(1) Were the parties legally able to contract a valid marriage on April 13, 1976?
(2) If the purported marriage was invalid, was it nevertheless contracted in good faith?
(3) Is the wife entitled to alimony as a civil effect of the putative marriage?
(4) What effect do the nullity proceedings have on the previously awarded alimony pendente lite?
VALIDITY OF THE MARRIAGE
According to the Civil Code an essential requisite to the validity of a marriage is the capacity to contract. La.C.C. Art. 90(2). This required capacity is absent when there exists an impediment to a marriage in the form of a previously existing marriage of one of the parties not dissolved by death, divorce, or declaration of nullity. La.C.C. Arts. 93, 136. A marriage contracted in contravention of the rules against bigamous marriages may be impeached by any interested person. La.C.C. Art. 113.
Even though the judgment of divorce which dissolved plaintiff's previous marriage was rendered in open court before his purported marriage to defendant, the judgment was not signed until after this remarriage. Defendant argues that to rule invalid a marriage under circumstances where the signing of judgment followed oral rendition by only 24 hours would in effect be allowing a mere technical procedural matter to triumph over substance. She cites by analogy cases in which an appeal is granted and perfected after rendition, but before signing. In such cases the jurisprudence has held that the signing of a judgment close in time to rendition cures the prematurity. *1368 See Nomey v. State, Dept. of Highways, 325 So.2d 732 (La.App.2d Cir. 1976).
We find those cases inapposite to the instant situation. One of the underlying policy considerations in allowing the maintenance of an appeal (if not the principal consideration) from an unsigned judgment when the judgment is signed close in time to rendition is the protection of a party's right to have an adverse judgment reviewed by an appellate court. Such considerations would play no part in a decision declaring the marriage between plaintiff and defendant to be valid. On the contrary, we note that plaintiff's former wife could have appealed the judgment of divorce after the purported marriage between plaintiff and defendant since the delays for appealing would not begin to run until after the divorce judgment was signed on April 14, 1976. See La.C.C.P. Arts. 2087, 1974, 1911.
The jurisprudence closest in point leads us to conclude that plaintiff's prior marriage was not dissolved by a final judgment until the signing of that judgment on April 14, 1976. See Farrell v. Farrell, 275 So.2d 489 (La.App. 1st Cir. 1973) and authorities cited therein.
Since the judgment dissolving plaintiff's prior marriage could have no effect until it was signed, the purported marriage between plaintiff and defendant on April 13, 1976, is in direct contravention of Art. 93 of the Civil Code. In Farrell, the First Circuit was faced with a situation in which a divorce judgment was rendered in open court but not signed until two years later. The court there held that a marriage entered into between oral rendition and signing was an absolute nullity:
... A person who is married to one person not only is incapable of contracting another marriage, but the attempted second marriage is not susceptible of ratification or confirmation, whether express or implied. Clark v. Clark, 192 So.2d 594 (La.App.3d Cir. 1966) and Melancon v. Sonnier, 157 So.2d 577 (La.App.3d Cir. 1963). The trial court was correct in annulling defendant's marriage to plaintiff on the evidence shown. C.C. Arts. 113, 114.
Likewise, in the instant case the judgment of the trial court decreeing the marriage between plaintiff and defendant to be an absolute nullity is correct.
GOOD FAITH OF THE PARTIES
The trial court specifically found both plaintiff and defendant to be in good faith and thus the annulled marriage was held to nevertheless produce the civil effects of a valid marriage.[1] Good faith in the context of this putative marriage doctrine is defined as an honest and reasonable belief that the marriage was valid and that no legal impediment to it existed. See Funderburk v. Funderburk, 214 La. 717, 38 So.2d 502 (1949). The question of whether a party is in good faith in entering into an invalid bigamous marriage is a subjective inquiry, Succession of Marinoni, 183 La. 776, 164 So. 797 (1935), and depends on all the circumstances presented in any given case. Succession of Chavis, 211 La. 313, 29 So.2d 60 (1947).
Plaintiff contends that the trial judge erred in refusing to allow him to introduce evidence which would have shown that defendant had been advised that she should not marry plaintiff on April 13, 1976, due to the Texas law which required a 30-day period between divorce and remarriage. This evidence was placed in the record under an offer of proof. Again, the important inquiry is whether defendant had an honest and reasonable belief that no impediment existed to her marriage to plaintiff and to that end her knowledge of the Texas statute may have had a bearing on her good faith in entering into the marriage with plaintiff.
*1369 The issue of good faith of the parties to an invalid marriage presents a question of fact which must be determined by the trial judge and his findings are entitled to great weight. Gathwright v. Smith, 368 So.2d 679 (La.1978). Even after considering the excluded evidence, we are of the opinion that the trial court's conclusion that defendant was in good faith is adequately supported by the record and is not clearly wrong. There are no additional allegations by plaintiff which would suggest that defendant had any reason to believe that her marriage to plaintiff was anything but a valid and legal marriage.
Plaintiff alleged that he did not discover until shortly before filing his nullity action that the divorce judgment of April 13, 1976, was not signed until the day after he and defendant married. Although defendant originally asserted that plaintiff was in bad faith in her answer to plaintiff's action of nullity, no evidence was presented to support that allegation and she does not now dispute the trial court's holding that plaintiff was in good faith.
We therefore conclude that the trial court properly found that the annulled marriage of April 13, 1976, between plaintiff and defendant was entered into in good faith on the part of both parties to the marriage.
PUTATIVE WIFE'S RIGHT TO CLAIM ALIMONY
Defendant sought by reconventional demand to plaintiff's petition for nullity "all the benefits of a putative wife, including... permanent alimony ...." Plaintiff sought to introduce evidence of defendant's "fault" as that term is employed in reference to La.C.C. Art. 160 alimony in order to preclude defendant's right to claim this award. The trial court was of the opinion that fault was not at issue in a putative marriage situation and refused to allow plaintiff's evidence. On the other hand, the trial court held that the "rules of permanent alimony" apply in a putative situation such as this and denied the wife's claim upon a finding that she was not in necessitous circumstances. Plaintiff contends that it was error to exclude evidence of fault when a determination of fault on the part of a divorced wife of a valid marriage would preclude an award of alimony. C.C. Art. 160. Plaintiff further contends that reserving to defendant in this case the right to seek permanent alimony at a later date regardless of her fault would be placing defendant in a better position than a divorced wife of a valid marriage.
It is established that alimony is a civil effect of the marriage flowing to a good faith wife of the putative marriage when the other party is in bad faith. Cortes v. Fleming, 307 So.2d 611 (La.1973). Since in the present case both parties are in good faith, we are presented with the "more difficult question" not before the Supreme Court in Cortes, i. e., does the wife have a right to claim alimony from a good faith husband.
The Supreme Court in Cortes discussed the possible codal bases for awarding alimony to a good faith wife from a bad faith husband when it compared French authorities to our own provisions of the Civil Code. In such situations the award could be viewed as damages under Art. 2315; as a pension analogous to Art. 160 alimony; or simply as a fruit of a putative marriage flowing as a civil effect under Arts. 117-118. The issue before us is what should be the basis for the award of alimony to a putative spouse when both parties are in good faith.
In Cortes, the Supreme Court stated that the mutual obligation of support owed by married persons to each other (La.C.C. Art. 119) was a civil effect of the marriage. If the obligation of support established by Art. 119 is an effect of the marriage established at its confection, then it is a civil effect flowing to a good faith spouse under Arts. 117 and 118. Such is not the result in France, however, when both spouses to the putative marriage are in good faith as is pointed out in Cortes. The French deny the good faith putative wife the right to claim alimony from a good faith husband under the theory that the obligation of support growing out of the marriage disappears when the marriage is annulled. I Planiol, Civil Law Treatise, No. 1111 (La.St.L.Inst. trans. 1959).
*1370 The trial court in the instant case analogized putative alimony to permanent alimony after divorce (C.C. Art. 160) by reserving to the wife the right to claim this pension-type award at a later time. This was the analysis employed by the Third Circuit in Austin v. Ok Hui Pak, 378 So.2d 623 (La. App.3d Cir. 1979), in a situation where the putative husband was in bad faith.
Although the issue was not before the Supreme Court in Cortes and we find no cases discussing a situation such as we have before us, we are of the opinion that alimony after annulment as a civil effect of a putative marriage when both spouses are in good faith should be dealt with according to the rules for alimony after divorce under Art. 160. A wife could have an honest and reasonable belief that no impediment existed to her absolutely null marriage and yet be guilty of Art. 160 fault. Such a putative spouse should not be placed in a more advantageous position than a divorced spouse of a valid marriage. Therefore we conclude that the good faith spouse claiming permanent alimony from the other good faith spouse after the marriage is annulled will be precluded from doing so if guilty of fault.
Defendant does not contest the trial court's factual determination that she is not at the present time in necessitous circumstances. If at a future time defendant presents the question of permanent alimony to the court her pre-annulment fault will properly be at issue.
EFFECT OF NULLITY JUDGMENT ON PREVIOUS PENDENTE LITE AWARDS
As previously discussed, the September 1979 judgment on a rule to fix pendente lite alimony was appealed by defendant to this court where the judgment was affirmed as amended. Galbraith, supra. Plaintiff now contends that since the nullity judgment has in effect decreed that the parties' marriage was void ab initio, then all incidental relief should fall. This argument has no merit for the reason that the prior award of pendente lite alimony is now a definitive judgment and plaintiff's attempt to have such award set aside amounts to a collateral attack reprobated by established jurisprudence. See Allen v. Commercial National Bank in Shreveport, 243 La. 840, 147 So.2d 865 (1962).
While it is true that the judgment of nullity has the effect of terminating the prior pendente lite award, such prior award will continue and payments accrue until this judgment becomes definitive. La.C.C.P. Art. 1842; Austin, supra.
The judgment appealed reduced the pendente lite alimony previously fixed to $350.00 effective October 16, 1979, the filing date of the first petition for reduction or elimination. This reduction is not questioned on appeal.
The trial judge assessed all of the costs of this suit to the putative community. Plaintiff contends this was error, however, counsel for plaintiff cites us no authority for this proposition. We consider this an equitable solution and find no abuse of discretion on the part of the trial judge in assessing these costs to the putative community. See La.C.C.P. Arts. 1920 and 2164.
For the reasons herein assigned the judgment appealed is affirmed. Costs of this appeal are assessed to plaintiff. Fred W. Jones, Jr., Judge, concurs in part and dissents in part and will assign written reasons.
FRED W. JONES, Jr., J., concurs in part and dissents in part.
FRED W. JONES, Jr., Judge, concurring in part and dissenting in part.
I agree with the disposition by the majority of all issues presented by this appeal except that involving the putative wife's claim to permanent alimony. On this question the majority holds that, when both parties to a putative marriage are in good faith, one of them who was not at fault may claim permanent alimony from the other upon meeting evidentiary requirements relating to financial circumstances. I believe that this is an unwarranted expansion of the ruling of Cortes v. Fleming, 307 So.2d 611 (La.1973).
*1371 It should be first noted that the Cortes ruling was extremely narrow and restricted to the finding that "alimony is a civil effect of the marriage in favor of a good faith wife of that putative marriage when the other party is in bad faith." (Emphasis added) This limited holding is consistent with the French concept of alimony in a putative marriage situation.[1] The court carefully excluded from the ambit of its decision the "more difficult question which will be presented when both parties are in good faith."[2]
Next, although the court in Cortes posited several codal articles as authority for its ruling,[3] the most logical basis for allowing one putative spouse to recover alimony because of the bad faith of the other is La. Civil Code Art. 2315analogizing the alimony award to damages suffered through the deception of the other party. Viewed in this context, the Cortes holding could not be logically extended to our case in which the party from whom alimony is claimed was in good faith. For this reason, I believe that the majority erred in concluding that a good faith putative spouse may recover alimony from the other good faith putative spouse.
The conceptual difficulties presented by the majority basing its holding on this issue on La.C.C. Art. 160 are apparent. To begin with, this article is placed in the Civil Code chapter entitled "Of the Effects of Separation from Bed and Board and of Divorce." There is no indication whatsoever that it was meant to provide for permanent alimony in a putative marriage situation. Furthermore, applying the fault concept of Article 160 leads into a legal quagmire. However, this was an inevitable consequence of the erroneous reliance by the majority upon Article 160, since it was unwilling to bestow upon the putative spouse an advantage not enjoyed by the legal spouse, i. e., to receive permanent alimony even though at fault.
It is axiomatic that Article 160 fault is "misconduct of serious nature which is also an independent contributory or proximate cause of the separation." Pearce v. Pearce, 348 So.2d 75 (La.1977). Unlike most divorce suits, an action for nullity of a marriage would not be expected to pose a fault question. If this matter of permanent alimony is again presented to the trial judge here, under the majority's ruling in what respect must the claimant putative spouse prove that she was free of fault? Certainly not for the marital breakup, since there was never a legal marriage. If the question is directed at the cause of the physical separation parties may be placed in a "Catch-22" bind. For example, after having lived together for some time believing that the marriage was valid, one of the parties discovers its invalidity. Absent a prompt remarriage, conventional morals would dictate an immediate physical separation. Under the majority's holding the party who acted properly and left would be guilty of abandonment and considered at fault in connection with the permanent alimony issue.
Exigencies of a unique factual situation may compel courts to "legislate" interstitially pending consideration of the question by an elected, deliberative body. This case is not one of those rare instances. If in Louisiana a good faith putative spouse is entitled to permanent alimony from the other good faith putative spouse, that decision should be the result of legislative action rather than judicial fiat.
For these reasons, I respectfully dissent from the holding of the majority that one good faith putative spouse may claim alimony from the other good faith putative spouse, but concur with the other holdings of the majority. I would amend the judgment of the trial court pertaining to the issue of permanent alimony and would rule that, since both putative spouses were in good faith, the putative wife's claim for permanent alimony is disallowed.
NOTES
[1] La.C.C. Arts. 117 and 118 provide:

Art. 117. The marriage, which has been declared null, produces nevertheless its civil effects as it relates to the parties and their children, if it has been contracted in good faith.
Art. 118. If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage.
[1] As pointed out by the majority, in France when both spouses to a null marriage are in good faith, alimony cannot be claimed by either party. I Planiol, Civil Law Treatise, No. 1111 (La.St.L.Inst. trans. 1959).
[2] See Footnote 8, p. 616.
[3] La.C.C. Arts. 119, 160, 2315.