457 So.2d 146 (1984)
SUCCESSION OF Annie Lee Johnson ADGER.
Nos. 16446-CA, 16447-CA.
Court of Appeal of Louisiana, Second Circuit.
September 26, 1984.
Gamm, Greenberg & Kaplan by Jack H. Kaplan, Shreveport, for plaintiffs-appellees, Andrew Johnson, Emanuel Johnson, Antra B. Johnson, Janice Givens Individually *147 and as Tutrix of the minor Lytishia Givens.
Jimmie L. Moss, Baton Rouge, for defendants-appellees, Clark H. Morgan, Jr. and Shirley M. Marcus.
Johnson, Ritzie, Taylor & Thomas by Ernest L. Johnson, Baton Rouge, for petitioner-appellant and intervenor-appellant, Douglas Adger.
Before HALL, MARVIN and NORRIS, JJ.
NORRIS, Judge.
In this succession proceeding, intervenor Douglas Adger, adjudged to be the good faith putative spouse of the deceased, Annie Lee Johnson Adger, appeals that portion of a judgment declaring certain property to be the separate property of the deceased. We affirm.
Annie Lee Johnson Adger died in Caddo Parish on May 24, 1982. On April 16, 1938, the deceased married Willie Kinchen, from whom she was not divorced until January 21, 1970. However, on December 9, 1946, she participated in a marriage ceremony in Ohio with Douglas Adger. Adger had no knowledge of this prior marriage until after the death of the deceased. The deceased and Adger established a domicile in Chicago where they continued to live until they separated physically in 1948. In 1949, the deceased moved to Shreveport to care for her ill mother and never returned to live with Adger in Illinois. Adger continued to reside in Chicago until 1955, when he established a domicile in Baton Rouge, Louisiana, where he has remained.
After the death of the deceased, collateral heirs[1] and legatees of the deceased filed a petition to open her succession and to probate a purported olographic will. At that time, Andrew Johnson was appointed administrator of her succession and a notary public was appointed to make an inventory of the succession property. Other collateral heirs[2] filed an opposition to the probate alleging the invalidity of the will presented for probate because of its failure to meet the requisite formal requirements. This opposition was heard and taken under advisement by the trial court.
In a separate proceeding, which has since been consolidated with this proceeding by stipulation of counsel, Adger filed an ex parte petition and secured an ex parte judgment recognizing him as the surviving spouse of the deceased and owner of the community property comprising the succession.
Thereafter, certain of the collateral heirs filed a rule in this proceeding to declare that ex parte judgment of possession to be null and void. Adger intervened in this proceeding alleging that he had formerly obtained a judgment of possession and opposing the probate of the will.
Although the matter of the validity of the will had not yet been decided by another division of the same district court,[3] another trial judge upon stipulation of the parties agreed to hear all of the remaining issues raised by the parties simultaneously. After hearing all of the evidence, the trial court rendered judgment declaring (1) Adger to be the surviving putative spouse of the deceased and entitled to his rights as such; (2) that all assets listed in the succession were the separate property of the deceased and formed no part of the community of acquets and gains existing between appellant and deceased; and (3) recalling and setting aside the judgment in the ex parte succession proceeding instituted by Adger.
Only Adger appeals from that judgment assigning as his sole error:
Whether the Honorable Court erred in ruling that the property purchased by *148 Annie Lee Johnson Adger, which did not contain a double declaration, was separate property?
The trial court found as a matter of fact that Adger had no knowledge of the deceased's marriage to Willie Kinchen prior to her death. Therefore, the trial court concluded that Adger was the good faith putative spouse of the deceased. This finding of fact is not seriously disputed in this appeal. Furthermore, the issue of good faith is a question of fact which must be determined by the trial judge whose findings in this regard are entitled to great weight. Galbraith v. Galbraith, 396 So.2d 1364 (La.App. 2d Cir.1981). When a spouse contracts a marriage in good faith, that marriage produces all of the legal effects of a valid marriage in favor of the good faith spouse which continue until marriage was declared a nullity or at least until good faith ceases. La.Civ.Code Arts. 117 and 118; Lee v. Hunt, 483 F.Supp. 826 (W.D. La.1979) affirmed 631 F.2d 1171 (5th Cir. 1980), cert. denied, 454 U.S. 834, 102 S.Ct. 133, 71 L.Ed.2d 118 (1981); Ray v. Knox, 164 La. 193, 113 So. 814 (1927); Succession of Choyce, 183 So.2d 457 (La.App. 2d Cir. 1966). But see, Cortes v. Fleming, 307 So.2d 611 (La.1973); Smith v. Smith, 43 La.Ann. 1140, 10 So. 248 (1891). One of the civil effects which flows to such a good faith spouse is that of the benefits of the community of acquets and gains. Jones v. Squire, 137 La. 883, 69 So. 733 (1915).
All of the property purchased by the deceased was acquired after the parties ceased living together in Chicago. The deceased first purchased two parcels of immovable property in 1954[4] and thereafter purchased an additional parcel in 1970.[5]
At trial, Adger attempted to prove that he and the deceased had never actually separated but that they had maintained a "marital relationship," albeit many miles apart and even though he admittedly had requested a divorce on several occasions. It was Adger's contention that when he was in or enroute through Shreveport he would stay in the home of the deceased. Although he indicated that the parties engaged in marital relations on these occasions at least until 1952 or 1959, his testimony is at best vague, indefinite and confusing in this regard. He did testify that when he stayed or visited in the home of the deceased he had his own room. He further testified that he had contributed to the support of the deceased during this period. It was his testimony that because she refused to take any money directly from him, it was his practice to leave sums of money in cash under a pillow on the bed or on the coffee table. He later described these gifts as being "donations" with "no strings attached" for her use as she saw fit. He admits that he has no corroborating evidence to support this testimony and further admits that they never shared their earnings or had a joint bank account after they physically separated in Chicago. Furthermore, he admitted he has lived with another woman in Baton Rouge since 1959, considers her his "wife" and they have acquired property.
There is testimony from relatives of the deceased that she and Adger never lived together in Shreveport or in Baton Rouge and that Adger only occasionally visited in her home during the years of their separation prior to her death. There is additional uncontradicted testimony that the deceased was gainfully employed as a beautician, insurance salesman and by a convalesant home, and supported herself after the parties *149 separated. One of deceased's brothers testified that he had given the deceased money for her to use in purchasing and making repairs to one piece of the property in dispute.
The trial court found that a marriage ceremony had taken place between Douglas Adger and the deceased in Ohio and that neither party secured a divorce although they had lived separate and apart since their physical separation in 1952,[6] when she came to Caddo Parish and he remained in Chicago. It was further found that although Adger did visit the deceased occasionally that the parties had never reconciled. Therefore, it was concluded that all of the assets in the succession were purchased after the parties were physically separated, that both had always worked, that both had kept their finances separate and that both had separate incomes. The testimony of Adger that he had left money for the deceased was rejected as being not sufficiently established.
On appeal, Adger argues that the purchase of property by married persons is presumed conclusively to be community unless the act of sale contains a double declaration reciting that the property is to be separate property. Appellant misstates the law. The jurisprudence interpreting now-repealed La.Civ.Code Arts. 2334 and 2402 has established that as to immovable property conveyed to the husband for a cash consideration during marriage, there is an irrebuttable presumption that it is community property unless there is contained in the act of acquisition the double declaration that the property was acquired with funds belonging to the husband separately, and that it was acquired for his individual estate. However, this irrebuttable presumption, where the double declaration is absent, has never been applied to immovable property purchased by the wife during the marriage. She could always assert and prove that the purchase was made with separate funds at any time. Wood v. Wood, 424 So.2d 1143 (La.App. 1st Cir.1982); Phillips v. Nereaux, 357 So.2d 813 (La.App. 3d Cir.1978); Barnett v. Barnett, 339 So.2d 495 (La.App. 2d Cir.1976), writ denied 341 So.2d 1127 (La.1977). Further, appellant's argument ignores the changes in the law regarding matrimonial regimes by Act No. 709 of the 1979 Louisiana Legislature, effective January 1, 1980. As enacted therein, La.Civ.Code Art. 2340 eliminates the double declaration requirement and this provision is to be applied retroactively. See Wood v. Wood, supra. Accordingly, this argument is meritless.
Adger finally argues in effect that the evidence was not sufficient to support the trial court's determination that the property was separate, rather than community.
It may be proved that although property is purchased during the existence of a community of acquets and gains it is the separate property of either spouse. See La.Civ.Code Art. 2340. This opportunity of proof was available to the wife, prior to the adoption of Art. 2340. See Succession of Joseph, 180 So.2d 862 (La.App. 3d Cir.1965). The burden of overcoming the presumption of the community nature of property acquired during the marriage rests upon the party asserting its separate and paraphernal nature; to satisfy this burden the proof must be clear, positive and legally certain. Succession of Joseph, supra. The status of property as community or separate is fixed at the time of its acquisition. Whatley v. Whatley, 439 So.2d 444 (La.App. 2d Cir.1983). No provisions of the recently enacted community property regimes law can apply retroactively to change the classification of property as community or separate. Wood v. Wood, supra. La.Civ.Code Art. 2334, in effect at the time that the property was acquired, provided that the earnings of the wife while living separate and apart from her husband although not separated by a court judgment, are her separate property, and the property purchased with all funds thus *150 derived were the separate property of the wife. See Succession of Smith, 247 La. 921, 175 So.2d 269 (1965); Succession of Joseph, supra.
Based upon the evidence presented, the trial court concluded that the property in question was purchased with the separate funds of the deceased while she was living separate and apart from Adger without reconciliation. Despite appellant's contentions, the evidence does successfully negative by clear and convincing proof any other source of the funds used to acquire the 1954 and 1970 properties other than Annie's separate earnings while living separate and apart from appellant. It is uncontradicted that deceased worked after her return to Shreveport in 1949, sometimes at two jobs; the evidence is overwhelming that she lived separate and apart from appellant since that time; and the trial court certainly did not abuse its discretion in finding unreliable appellant's almost incredible testimony about leaving money under the pillow and on the coffee table on various occasions.
The factual findings of the trial judge are supported by the record and are not clearly erroneous, particularly since they are primarily based on the trial judge's credibility evaluation of the witnesses which is entitled to great weight upon appeal.
For the foregoing reasons, the judgment of the trial court is affirmed at the cost of appellant.
JUDGMENT AFFIRMED.
NOTES
[1] Andrew Johnson (the deceased's brother); Emmanuel Johnson (the deceased's brother); Antra B. Johnson (the deceased's sister) and Janice Givens, individually and as tutor of the minor Lytishia Givens (the deceased's niece).
[2] Clark H. Morgan and Shirley M. Marcus (the nephew and niece of the deceased).
[3] The will was subsequently declared to be invalid and that issue is not involved in this appeal.
[4] The first deed of acquisition is dated March 29, 1954, shows a cash consideration of $800 and describes deceased as Annie L. Johnson, a single woman; the second deed is also a cash deed, dated July 29, 1954, shows a cash consideration of $400 and describes deceased-vendee as "Annie Lee Johnson, wife of Douglas Adger... who declared that she is purchasing said property with her separate and paraphernal funds and in her maiden name ..."
[5] This lot was purchased by cash deed dated February 4, 1970, for a cash consideration of $3,300 and described deceased as a single woman. This purchase would have been after she obtained a judgment of divorce from Willie Kinchen, which judgment was dated January 21, 1970.
[6] The testimony from Adger in the record is that the parties actually separated prior to the time that she returned to Louisiana in 1949; however, this discrepancy is not material to the result in this opinion.