617 So.2d 1239 (1993)
Charles S. HACKETT, Plaintiff-Appellant,
v.
Patricia HACKETT, Defendant-Appellee.
No. 92-929.
Court of Appeal of Louisiana, Third Circuit.
May 5, 1993.
*1240 Randy J. Fuerst, Lake Charles, for plaintiff-appellant.
Leonard Knapp, Jr., and James Kenneth Yelverton, Lake Charles, for defendant-appellee.
Before LABORDE, THIBODEAUX and SAUNDERS, JJ.
LABORDE, Judge.
Both appellant, Charles S. Hackett, and appellee, Patricia Hackett, appeal the trial court's judgment on a rule for reduction in alimony. We reverse and amend, finding error on the part of the trial court.

FACTS
On January 16, 1990, Charles S. Hackett filed a petition for divorce alleging having lived separate and apart in excess of one year and requesting that alimony pendente lite be terminated. Patricia H. Hackett filed a reconventional demand requesting permanent alimony and the continuation of her hospitalization insurance. On March 19, 1990, the trial court granted Charles Hackett a divorce and ordered he pay rehabilitative alimony to Patricia Hackett in the sum of $850.00 per month for ninety days and then a reduced sum of $500.00 per month for the next ninety days and then ordered it be terminated. It further ordered Charles Hackett to maintain hospitalization insurance on Patricia Hackett for a total of six months. An appeal was taken from this decision.
The Third Circuit Court of Appeal amended the trial court's decision on December 28, 1991, bearing this court's docket number 90-635. The appellate court ordered Charles Hackett to pay Patricia Hackett alimony in the sum of $850.00 per month and further ordered that he maintain hospitalization insurance on Patricia Hackett. The judgment was made retroactive to March 1990, the date of the rendition of the judgment of divorce by the trial court. The Louisiana Supreme Court denied writs on February 21, 1992.
On February 18, 1992, Charles filed a rule for termination or reduction of alimony. Patricia, on March 31, 1992, filed a rule for contempt and to make the alimony judgment executory. On April 20, 1992, a trial on the merits was held on the rules and the judgment ordered Charles to pay alimony to Patricia in the amount of $575.00 per month beginning on August 1, 1991. The trial court also ordered Charles to pay $15,300.00 plus legal interest on past due alimony through May, 1992. The trial court denied Patricia's request for reimbursement of medical insurance from October, 1990 through the date of the judgment.
Charles filed a motion for a new trial on June 23, 1992 which was denied. He then appealed. Patricia answered the appeal. Patricia died on October 2, 1992. The succession representative was enrolled as a substitute party.
Charles alleges the following assignments of error: First, he contends the trial court erred in computing the alimony reduction by considering the full gross income of Charles' new spouse, instead of a maximum one-half of that income. Second, he contends the court erred in computing the alimony reduction by imputing speculative oil revenues at full value to him. *1241 Third, he maintains the trial court erred by ignoring the only expert testimony on the income available to Charles on a monthly basis from which to pay alimony. And finally, he alleges the trial court erred in not reducing the alimony, effective January 1, 1991, instead of August 1, 1991.
Patricia answered the appeal and alleges the following assignments of error: First, she alleges the trial court erred in granting a reduction in alimony making it retroactive to August, 1991, which was prior to the filing of the rule for reduction. Second, she contends the trial court erred in denying her reimbursement of medical insurance for the period of time from October, 1990 to the filing of Charles' rule on February 18, 1992. And last, she maintains the trial court correctly fixed alimony at $575.00 per month.

RETROACTIVITY OF REDUCTION OF ALIMONY
Charles maintains the trial court erred in reducing his support obligation retroactive to August 1, 1991 and asserts the trial court should have made the reduction retroactive to January 1, 1991. Patricia maintains the trial court erred in making the reduction in alimony retroactive to August 1, 1991 since this date is prior to the filing of the rule for reduction. After a careful review of the record, it is apparent the change of circumstances necessitating the reduction in alimony occurred when Charles' income from the mineral leases decreased from $35,000.00 to $6,900.00, which occurred in July, 1991.
La.R.S. 9:310 provides that an order for child support or alimony shall be retroactive to the filing date of the petition, unless the court finds good cause for not making the award retroactive, in which case the court may fix the date such award shall become due. In Hogan v. Hogan, 549 So.2d 267 (La.1989), the Louisiana Supreme Court considered the question of retroactivity of reduction of alimony and child support awards and stated:
[14-16] Under the legislative and doctrinal scheme, the creditor's substantive right to alimony clearly begins, fluctuates and ends in accordance with his needs and the debtor's ability to pay. Accordingly, a utopian court, following the code and Planiol literally, would decree that any modification in the alimony award shall take effect as of the precise moment of the consequential change in the parties' situation. In the interests of judicial efficiency and social utility, however, this court has superimposed a procedural rule limiting the retroactive scope of a court's determination of a debtor's entitlement to a reduction of or a discharge from his liability: relief may be granted only from and after the time it is sought by an appropriate pleading.
The court further provided:
[17, 18] A study of the characteristics of the alimentary system preexisting La. R.S. 9:310 leads us to conclude that while it, for the most part, demanded that initial alimony and increase orders be retroactive to filing, it also permitted the court within its discretion to fashion a different solution when required by justice in extraordinary circumstances. The Civil Code sparsely formulates the legal rules for granting and changing alimony in the most general terms, thereby giving the courts great discretion in its application.
It was the above language from Hogan, supra, that the trial court relied upon in its reasons for judgment in making the reduction in alimony retroactive to the date of the change of circumstances. The trial court stated: "However, a reading of that case (Hogan) and of La.R.S. 9:310 permits `the court within its discretion to fashion a different solution when required by justice in extraordinary circumstances.' On this basis, the court is empowered to review the new evidence submitted by the parties at the latest hearing to determine if Mr. Hackett did sustain a change in circumstances and if that change entitles him to any modification of the award of alimony relating back to that change."
The trial court misinterpreted the quoted language from Hogan, supra. The "different solution when required by justice in extraordinary circumstances" referred to *1242 in Hogan, supra, applies only when the court finds good cause for not making the reduction retroactive. Otherwise, the reduction in alimony is retroactive to the filing date of the petition for reduction in alimony. This interpretation is consistent with La.R.S. 9:310. Therefore, the trial court erred in making the award retroactive to the date of the change of circumstances. The award is retroactive to the date of the filing date of the petition for a reduction in alimony, or February 19, 1992.

COMPUTATION OF ALIMONY
Charles' first, second, and third assignments of error involve the calculation of alimony and Patricia asserts in her first assignment of error that the trial court did not err in its fixing of the alimony obligation at $575.00. Therefore, we will address these assignments of error together. Charles contends the trial court erred in computing the alimony by considering the full gross income of Charles' new spouse instead of a maximum one-half of that income. After reading the trial court's reasons for judgment, it is apparent the trial court imputed to Charles' income the $12,000.00 a year salary he pays his new wife to work at the restaurant he owns. The restaurant does not make enough profit to pay Charles a salary. Charles testified that his new wife's salary is spent on grocery and living expenses for the two of them. Charles' new wife's salary is community property, and thus, only a one-half interest in the $12,000.00 should be attributed to Charles. See La.C.C. art. 2338. Therefore, the trial court should only have included $6000.00 of the $12,000.00 in Charles income.
According to La.C.C. art. 112, a court may grant permanent alimony to a spouse from the property and earnings the other spouse as long as this amount does not exceed one-third of that spouse's income. Under the child support guidelines found in La.R.S. 9:315(6)(c), a court may consider as income the benefits a party derives from remarriage to the extent this income is used to reduce the cost of the obligor's actual expenses. Therefore, it follows that the same reasoning should apply in the context of permanent alimony. This is particularly true in light of the policy behind this law such as the state's desire to eliminate the possibility that the recipients of this support may become a burden on society. We therefore find it is permissible to attribute Charles' one-half interest in his second wife's income to Charles since this money constitutes part of his property and earnings from which permanent alimony is derived.
Charles further argues the trial court erred in its calculation of alimony by including in Charles' income speculative oil revenues at full value to him. In its calculations, the trial court included $6,900.00 in mineral income. Charles' mineral income decreased from $35,000.00 to $6,900.00 in July, 1991. Charles should only be imputed with half of the mineral income because he was married to his new wife when he received this $6,900.00 in mineral income, and according to La.C.C. art. 2339, revenues from separate property, such as Charles' mineral leases, are community property. Thus, Charles should only be imputed with $3450.00 as income from the mineral leases.
Charles maintains the trial court erred by ignoring the only expert testimony regarding Charles' available income and calculating the alimony based on gross income. Charles cites Simon v. Simon, 521 So.2d 1255 (La.App. 3d, 1988), writ denied, 526 So.2d 798 (La.1988), to support his position that the court should have used net income to calculate his income. The expert witness, an accountant, Mr. McDonald, testified as to what Charles' net income would be.
In Simon, supra, the court stated:
"Concerning the amount, La.C.C. Art. 160 limits the amount which a former spouse may be required to pay in alimony to one-third of his or her income. `Income' as used in this article has been interpreted by several courts to require the trial judge to consider both gross and net income. But although gross income may be the proper figure in some cases, the amount awarded is determined in *1243 light of all the circumstances of the particular record. Firstley v. Firstley, 427 So.2d 76 (La.App. 4th Cir.1983). In Johnson v. Johnson, 452 So.2d 322 (La. App. 4th Cir.1984), the court used the payor spouse's net income, finding that he had no control over the payroll deductions from his gross salary.
In the instant case, Charles is not affected by payroll deductions as he does not receive a salary. Thus, we cannot say the trial court abused its wide discretion in calculating alimony based on Charles' gross income.
Based on the foregoing reasons we calculate Charles' income as follows:

Salary: $ 6,000.00
Miscellaneous Income: 300.00
Mineral Income: 3,450.00
Farm Income: 1,500.00
Total: $11,250.00

This is $937.50 in monthly gross income. La.C.C. art. 112 provides that the alimony obligation shall not exceed one-third of the obligor's income. Therefore, Charles' alimony obligation should be $309.00 a month after February, 1992. Charles proved a change in circumstances and the award may not be made retroactive beyond the date of the filing of the petition for reduction unless the court finds good cause for not making the reduction retroactive at all, which we do not. Charles' total obligation is as follows: $350.00 per month for the three months during which Mr. Hackett only paid $500.00 of the $850.00 due; $850 per month until and including February, 1992 and $309.00 per month thereafter through September, 1992 as Patricia died October 2, 1992.
Past due alimony is a property right which is not defeated by the death of Patricia. See Cortes v. Fleming, 307 So.2d 611 (La.1973), affirmed on rehearing, 307 So.2d 618 (La.1974). Calculations of the alimony obligation are as follows:

1990 $350 × 3 mos.
 $850 × 3 mos. $ 3,600.00
1991 $850 × 12 mos. $10,200.00
1992 $850 × 2 mos.
 $309 × 7 mos. $ 3,863.00
 ----------
 TOTAL: $17,663.00

Therefore, Charles owes Patricia's estate $17,663.00 in past due alimony and legal interest thereon.

REIMBURSEMENT OF MEDICAL INSURANCE
Patricia asserts the trial court erred in denying her reimbursement of medical insurance for the period of time from October, 1990 to the filing of Charles' rule on February 18, 1992. The judgment of the Third Circuit ordered Charles to maintain hospitalization insurance for Patricia. The reduction in alimony is retroactive to the date of the filing of the rule or February 18, 1992, therefore, Charles is ordered to reimburse Patricia for the costs of all medical insurance through February, 1992. Therefore, according to the exhibits contained in the record, total $2794.58.

DECREE
The judgment of the lower court is reversed, amended and rendered. Costs of this appeal are to be assessed equally against appellant, Charles S. Hackett and appellee, Patricia Hackett.
REVERSED IN PART; AMENDED IN PART AND RENDERED.