h KIRBY, Judge.
Claimant-appellant Jane Murdock was employed as a waitress by appellee Felix’s Restaurant from November 8, 1996 to April 6, 1997, the date on which she was fired. Murdock subsequently sought unemployment benefits; the Office of Employment Security initially determined that she was eligible to collect those benefits. Felix’s appealed. At the appeal hearing, Felix’s argued that Murdock’s behavior on the night before her termination disqualified her for benefits under La. R.S. 23:1601(2); however, the hearing officer affirmed the agency’s original decision. Felix’s again appealed; the Board of Review reversed the earlier decisions and ordered Murdock disqualified for benefits effective April 6, 1997, under La. R.S. 23:1601(2). Murdock appealed this decision to the trial court, which affirmed the Board of Review’s decision. From this last judgment, Murdock appeals to this court.
On the night of April 5, 1997, Murdock was on shift at Felix’s for a fairly busy night; among her customers were two Asian men who, apparently, had only a limited command of the English language. According to Murdock, the two men were drunk at the time.
| ^Felix’s authorized its wait staff to automatically add tips to certain tickets during especially busy events, such as Mardi Gras or Jazzfest. (No major event was taking place in New Orleans during the night in question.) A gratuity could also be automatically added when a party was especially large. However, the evidence before us is unclear on the issue as to whether these tips were automatically added to foreign patrons’ tickets; Murdock claimed that this was common practice at Felix’s, due to some foreign patrons’ unfamiliarity with American tipping policies. Management denied that the practice of automatically adding tips applied to foreign customers.
In either case, Murdock did automatically add a 15% gratuity to the ticket of the two Asian customers, without asking their permission or that of a supervisor. The customers objected, and were told by Mur-dock that it was customary to add tips to foreign patrons’ bills. One of the men went to the cashier and asked if this was in fact customary; the cashier replied that it was not. Upon hearing this, the customer asked that the tip be removed. He was *718 further offended because he was apparently an American citizen. The manager on duty that night, Jean Hoover, came to remove the tip from their bill.
Both the cashier, Juanita Sims, and Hoover saw Murdock following the customers to the cashier’s station; Murdock was loudly protesting the removal of the tip. Hoover testified that Murdock spoke very rudely and poked her finger in the customer’s face; although Murdock denied shaking a finger at either customer, she admitted at the hearing to confronting them. She insisted that the customers owed her the tip money and that she expected it, repeating “You owe me six dollars.” Hoover told the waitress to “shut up,” but Murdock continued the confrontation with the customers. All parties agree that the customers were ^extremely angry, and seemed to believe that one of the customers was near the point of striking Murdock. However, his companion was able to effect their departure from the restaurant.
Hoover wrote the incident up for a senior manager; meanwhile, Murdock finished her shift that evening, but was advised to call in the morning to find out what disciplinary action was being taken. When Murdock called the next morning, the senior manager terminated her employment because of her actions the night of April 5.
Judicial review of the administrative decisions of the Louisiana Board of Review can involve only two essential questions: First, was the Board of Review’s decision based on sufficient competent evidence? Second, as a matter of law, did the findings of fact justify the decision of the Louisiana Board of Review? Banks v. Administrator, 393 So.2d 696 (La.1981). In the absence of fraud, the findings of the Board of Review are conclusive as to the facts of the case, thus limiting judicial review to questions of law only. La. R.S. 23:1624; Cox v. Lockwood, 373 So.2d 246 (La.App. 4 Cir.1979). This remains true even where the evidence is open to several reasonable constructions. Banks, supra. As such, our review in this case is limited to the question of whether or not the law permits Murdock’s disqualification for benefits in this situation.
Louisiana employment security law provides that an individual shall be disqualified from benefits for misconduct connected with the employment; misconduct, in this context, refers to mismanagement of a position of employment by action or inaction, neglect that places in jeopardy the lives and property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure the orderly work or safety of others. La. R.S. 23:1601(2).
1 ¿Murdock argues that this single incident should not constitute disqualifying misconduct under La. R.S. 23:1601(2). She points out that past claimants whose misconduct consisted of a single hotheaded incident, absent any injury or threats to persons or property, have often been found eligible for benefits; such hotheaded incidents without serious repercussions are generally considered not the type of premeditated and seriously improper conduct that constitutes cause to terminate employment benefits. Johnson v. Brown, 134 So.2d 388 (La.App. 3 Cir.1961.)
In Canty v. Administrator, 617 So.2d 1240 (La.App. 4 Cir.1987), the claimant, who had recently had surgery, had refused to pick up packages as directed by his supervisor. This court found that claimant’s refusal to obey what he believed to be an unjust order did not disqualify him from benefits.
In Freelow v. Sumrall, 425 So.2d 945 (La.App. 4 Cir.1983), the claimant and another employee were being warned about their job performance by a supervisor. Claimant said that the supervisor was a fool and did not know his own job, at which point the supervisor terminated him. This court stated: “[T]he language complained of occurred in the course of a conversation between appellant and his immediate su *719 pervisor in the presence of a fellow employee. ... [T]he record establishes that this was a single hotheaded incident which, under the totality of the circumstances, fell short of disqualifying ‘misconduct’ as defined in our jurisprudence.” Id. at 947.
Murdock argues that no past acts of insubordination were testified to at her hearing; although Hoover alleged that such acts had taken place, they were not linked to her termination. She used no vulgar language, nor threatened any persons or property. As such, she argues that these cases support her contention that her conduct does not disqualify her for unemployment benefits.
| ^However, we note that Murdock’s situation differs from those in Canty and Free-lou■) in one critical way: the hotheaded incidents in those cases took place only between an employee and supervisor, and were witnessed only by fellow employees. In the present case, Murdock engaged in a protracted verbal battle with customers in the sight and hearing of other customers. This is an egregious deviation from any standard of reasonable conduct.
Murdock argues that extenuating circumstances should prevent her disqualification. She points out that her behavior was unquestionably related to the customer’s refusal to tip her; the fact that an employee’s outburst has been provoked by either a loss of or delay in pay has, in the past, weighed against a finding of disqualification. In Gunn v. Gerace, 516 So.2d 1180 (La.App. 2 Cir.1987), the claimant had sworn and pointed at his supervisor during a heated discussion linked to the docking of his paycheck. In finding the claimant qualified to receive benefits, the appellate court noted: “News that he might not get paid is enough stimulus to upset any working person.” Id. at 1182.
However, Gunn also notes that there is “no rigid rule that every employee gets one tantrum free,” and urges a review of all the circumstances. Id. In the present case, Murdock’s public battle with her customers was over the refusal of a six-dollar tip - a tip and an amount to which Mur-dock had decided herself entitled. Tips, while customary, are generally voluntary, and the amount is discretionary for the restaurant patron. The loss of one six-dollar tip during a busy. evening at the restaurant does not represent the kind of provocation present in Gunn, where the claimant was being docked an entire day’s pay.
Murdock also argues that her conduct resulted in part from “insults and threats” made by the customers. She testified at the hearing that they were drunk Land abusive, and that one of them had called her “a bitch.” Hoover testified that she was aware of some problem at that table even before the argument at the cash register. All witnesses did agree that, by the time of the argument, one of the customers appeared near the point of striking the plaintiff. Murdock notes that provocation has also been found to weigh against a finding of misconduct. See Jacobs v. Gerace, 381 So.2d 935 (La.App. 3 Cir.1980).
However, from the evidence before us, it appears that the name-calling and threatened violence arose from the dispute over the tip, rather than preceding and provoking it. Although the customers were drunk and apparently troublesome beforehand, Murdock did not testify to any extreme behavior on their part before the argument over the tip, which she herself instigated. Given that fact, we cannot say that Murdock’s conduct was mitigated by this factor.
“Misconduct” under La. R.S. 23:1601(2) should be determined by the nature of the violation with due consideration of the factors which enter into the proper conduct of the employer’s work and business rather than determined upon the basis of the number of violations. Gunn, supra, at 1182. As Murdock engaged in a loud, protracted verbal battle with customers in the middle of a busy restaurant, no doubt in the sight and hearing of other *720 customers, the Board of Review’s finding that her misconduct disqualified her from receiving unemployment compensation was not in error. Accordingly, the judgment is affirmed.
AFFIRMED.