11 BROWN, C.J.
This is an appeal from a district court judgment which affirmed a decision of the Louisiana Department of Labor Board of *1053 Review denying unemployment compensation benefits to claimant, George Hooker, Jr., based upon its finding that claimant voluntarily left his employment. Finding legal error, we reverse and render.

Procedural Background

George Hooker, Jr., filed a claim for unemployment benefits with the Louisiana Department of Labor on October-18, 2002, alleging that he had been discharged from his employment with- Wal-Mart. On November 12, 2002, the Dept, of Labor initially determined that Hooker was entitled to benefits. Wal-Mart appealed, contending that Hooker voluntarily quit after refusing a suitable offer of work. The appeal was heard by an administrative law judge on December 24, 2002, at which time documentary evidence was submitted and testimony was taken from claimant and two Wal-Mart managers, Derek Blue and Mary Edmonson.
On January 3, 2003, the ALJ issued its decision finding that Hooker was not entitled to benefits pursuant to La. R.S. 23:1601(1). On January 10, 2003, Hooker filed an appeal with the Board of Review. On February 7, 2003, the Board of Review affirmed the ALJ’s decision adopting its findings of fact and conclusions of law. Claimant then filed a petition for judicial review on February 18, 2003. After reviewing the administrative record, the district court affirmed the decision of the Board in a judgment signed on September 25, 2003. This appeal followed.
| ¿Facts [1]
Derek Blue, co-manager of the Wal-Mart in Monroe, testified that Hooker worked for Wal-Mart on a full-time basis as a stocker. While Hooker was off work due to an on-the-job accident and was receiving workers’ compensation benefits, Wal-Mart unilaterally spoke with Hooker’s treating physician who indicated that Hooker could-return to light duty as of September 25, 2002. Pursuant to a call from Blue, Hooker came to the store on that date and was told that he would be working as a greeter. According to Blue, Hooker got belligerent and related that his doctor had told him that he was not released to return to work until October 7, 2002, some 12 days later. Hooker referred to a release he was issued by his doctor on his last visit, and informed Blue that it was his right to stay off work until October 7 and that he would return at that time.
Later that day, Blue contacted the insurance adjuster, who initiated a conference call between Blue and Hooker. This conversation was taped. While speaking to the adjuster, Hooker agreed to return to work on the following day-, September 26; however, he did not show up for work, nor did he call to say he would not be there. Someone from Wal-Mart made two unsuccessful attempts to call Hooker. Citing Wal-Mart’s policy, that three days of no show/no call warrants termination, Blue issued Hooker a letter ^dismissing him from employment. When Hooker came in to get his last check, he did not give a reason for his absence.
Hooker testified that he got hurt whilé unloading a truck at work. He told his supervisor of his accident, sought medical treatment, and began drawing workers’ compensation benefits. Hooker informed the ALJ that he never saw any report that *1054 released him tó return to work as of September 25, 2002, but learned of this alleged release for the first time when Blue called him. Hooker told Blue that he was not released until October 7, 2002, which was-the date he planned to return to work.
Hooker stated that it was then that a lady from the insurance company called him and he told her he would go back to work the next day. He changed his mind, however, because he didn’t have any income and stood to lose his apartment. Specifically, he was depending on his workers’ compensation benefits to- pay his rent.

Discussion

The Board of Review found that Hooker voluntarily left his employment without just cause.' According to Hooker, the evidence shows that he was off work receiving workers’ compensation benefits' and that he did not voluntarily leave his employment. He argues that the evidence shows that his doctor recommended that he remain off work until October 7, 2002, and, if this recommendation was amended, it was only after Wal-Mart inappropriately contacted his physician in violation of claimant’s rights under the workers’ compensation law. It is Hooker’s position that the Board of Review erred in concluding that he should be disqualified -under 14La. R.S. 23:1601(1), -which provides in pertinent part that an individual shall be disqualified for benefits if the administrator finds that he has left his employment without good cause attributable to a change made to the employment by the employer.-
Courts may not disturb factual findings of the • Board of Review when questions of weight and credibility are involved and when the conclusions are supported by sufficient evidence. Marchand v. Forster, 37,222 (La.App.2d Cir.06/25/03), 850 So.2d 941. Judicial review of the findings of the Board of Review does not permit weighing of the evidence, drawing of inferences, reevaluating of evidence or substituting views of the court for that of the board as to the correctness of the facts pres'ented. Marchand, supra; Lewis v. Administrator, 540 So.2d 491 (La.App. 1st Cir.1989). Therefore, it is for us to determine whether, the facts are supported by competent evidence and-whether the facts, as a. matter of law, justify the Board of Review’s decision. Banks v. Administrator, 393 So.2d 696 (La.1981); Marchand, supra; Murdock v. Felix’s Restaurant, 99-0053 (La.App. 4th Cir.06/02/99), 743 So.2d 716. '
It is undisputed that Hooker was not working but was receiving workers’ compensation benefits. The evidence presented in this case shows that Wal-Mart ordered Hooker back to work after Wal-Mart’s unilateral conversation with Hooker’s doctor. The law concerning such a situation is set forth in La. R.S. 23:1127, whose purpose and requirements were stated by this court as follows:
' One purpose of this statute is to avoid the misunderstandings and bruised feelings' which the employee might experience |fifrom an informal discussion of his medical condition by the employer or case manager. Instead, the case manager is first required to document the communication received from the employee’s doctor regarding the employee’s reasonable return to employment. When such written documentation is furnished to both the employee and the doctor, the employee may privately review the report and discuss and verify its content with his health care provider.
Hooker v. Wal-Mart Stores, 870 So.2d at 1136-37.
In the instant case, the ALJ found that Hooker left his employment without good cause, La. R.S. 23:1601(1), and was therefore not entitled to unemployment compensation. The evidence presented to *1055 the ALJ established that Wal-Mart neither furnished Hooker with a report of the diagnosis that it unilaterally obtained from claimant’s physician, nor did Wal-Mart discuss or verify its content with either Hooker or Dr. Bailey as required by La. R.S. 23:1127. Hooker’s absence from his employment was clearly for good cause attributable to a substantial change to his employment made by Wal-Mart. Under our workers’ compensation law, an injured worker cannot be forced to return to work prior to a release from his treating physician. Hooker had every right to rely on the release issued to him by Dr. Bailey during the course of his treatment, rather than being strong-armed into returning to work two weeks prior to that date. The amended release date was inappropriately obtained by his employer and was not properly verified or discussed with Hooker. Therefore, we find that Hooker did not voluntarily leave his employment, but instead was terminated for asserting his rights under the workers’ compensation law. The ALJ committed legal error in concluding otherwise.
| fiConclusion
For the reasons set forth above, the judgment of the district court affirming the Board of Review’s disqualification of claimant from receiving unemployment benefits is reversed.
IT IS ORDERED, ADJUDGED, AND DECREED that the Board of Review issue an order directing payment to claimant, George Hooker, Jr., of the unemployment compensation benefits to which he is entitled. Costs of this appeal are assessed to defendant, Wal-Mart Stores, Inc.

. The facts surrounding Hooker’s unemployment benefits claim also serve as the basis for two other lawsuits which have been reviewed by this court under its appellate jurisdiction. See Hooker v. Wal-Mart Stores, Inc., 38,350 (La.App.2d Cir.04/07/04), 870 So.2d 1131; Hooker v. Wal-Mart Stores, Inc., 38,244 (La. App.2d Cir.03/03/04), 867 So.2d 869. The evidence presented in the instant case is much less detailed than in the previous cases, probably because claimant was represented by counsel in those two" suits and appeared in proper person in this matter.